RICHARD A. VAZQUEZ (9128)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
Facsimile: (801) 363-0400

*Attorneys for Defendant Steadfast Insurance Company*

---

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| DYNO NOBEL, INC.,<br><br>     Plaintiff,<br><br>vs.<br><br>STEADFAST INSURANCE COMPANY,<br><br>     Defendant. | **SUMMARY JUDGMENT APPENDIX OF DEFENDANT STEADFAST INSURANCE COMPANY**<br><br>Civil No: 2:22-cv-00016-RJS-JCB<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Defendant, Steadfast Insurance Company ("Steadfast"), hereby provides the following Appendix of exhibits in support of its Motion for Summary Judgment:

1.  Notice of Removal filed in Third Judicial District Court for Salt Lake County, Case No. 210906012 on January 6, 2022, and filed as Document 2 in the within action [Def Appendix 0001-0003].

2.  Civil Cover Sheet filed as Document 2-1 in the within action [Def Appendix 0004].

3. Complaint filed in Third Judicial District Court on November 8, 2021 (Exhibit 1 to the Notice of Removal) [Def Appendix 0005-0012].

4. Zurich Commercial Insurance Policy No. GLO 3793060-07 (original Exhibit A to the Complaint filed in Third Judicial District Court, Case No. 210906012, on November 8, 2021) [Def Appendix 0013-0170].

5. Proof of Service of Complaint entitled *Teddy Scott and Melanie Scott v. Dyno Nobel, Inc.*, filed In the United States District Court for the Eastern District of Missouri, Case No. 16-1440, upon Dyno Nobel, Inc. through C T Corporation System, Clayton, MO, on September 27, 2016 (original Exhibit B to the Complaint filed in Third Judicial District Court, Case No. 210906012, on November 8, 2021) [Def Appendix 0171-0172].

6. Summons and Complaint in the action entitled *Teddy Scott and Melanie Scott v. Dyno Nobel, Inc.*, filed In the United States District Court for the Eastern District of Missouri, Case No. 16-1440, on September 9, 2016 (original Exhibit B to the Complaint filed in Third Judicial District Court, Case No. 210906012, on November 8, 2021) [Def Appendix 0173-0181].

7. First Amended Complaint in the action entitled *Teddy Scott and Melanie Scott v. Dyno Nobel, Inc.*, filed In the United States District Court for the Eastern District of Missouri, Case No. 16-1440, on March 3, 2017 (original Exhibit C to the Complaint filed in Third Judicial District Court, Case No. 210906012, on November 8, 2021) [Def Appendix 0182-0195].

8. Return of Electronic Notification and Notice of Electronic Filing of the Complaint filed in Third Judicial District Court, Case No. 210906012 on November 8, 2021 [Def Appendix 0196-0197].

9. Proof of Service of Summons and Complaint in the action entitled *Dyno Nobel, Inc. v. Steadfast Insurance Company*, Case No. 210906012, served upon Steadfast Insurance Company on December 7, 2021 [Def Appendix 0198].

10.     Return of Electronic Notification and Notice of Electronic Filing of the Return of

Service referred to in Paragraph 9, filed in Third Judicial District Court, Case No. 210906012, on

November 8, 2021 [Def Appendix 0199-0200].

DATED this 2nd day of May, 2022.

SNOW CHRISTENSEN & MARTINEAU

/s/ Richard A. Vazquez_____
Richard A. Vazquez
*Attorneys for Defendant Steadfast Insurance
Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I electronically filed the foregoing **SUMMARY JUDGMENT APPENDIX OF DEFENDANT STEADFAST INSURANCE COMPANY** with the Clerk of Court using the Court's CM/ECF system which will send electronic notification of such filing to the following:

Milo Steven Marsden
Ashley M. Walker
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
marsden.steve@dorsey.com
walker.ashley@dorsey.com

Daniel J. Brown (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
brown.daniel@dorsey.com

*Attorneys for Plaintiff Dyno Nobel, Inc.*

_____/s/  Penny Brown_____
Legal Assistant

RICHARD A. VAZQUEZ (9128)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone:  (801) 521-9000
Facsimile: (801) 363-0400

*Attorneys for Defendant Steadfast Insurance Company*

---

## IN THIRD JUDICIAL DISTRICT COURT FOR SALT LAKE COUNTY
## STATE OF UTAH

| | |
|---|---|
| DYNO NOBEL, INC., | **NOTICE OF REMOVAL** |
| Plaintiff, | Civil No 210906012 |
| vs. | Judge Robert P. Faust |
| STEADFAST INSURANCE COMPANY, | |
| Defendant. | |

PLEASE TAKE NOTICE that on January 6, 2022, a Notice of Removal of the above-entitled action was filed in the United States District Court for the District of Utah on behalf of Defendants pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  The filing of that Notice in the United States District Court and the filing of this Notice in this State Court effects removal of this action from the State Court.  No further proceedings in this action before the State Court are allowed unless and until the action is remanded by the United States District Court.  A true and correct copy of the Notice filed in the United States District Court is attached hereto as Exhibit A.

Def Appendix 0001

DATED this 6th day of January, 2022.

SNOW CHRISTENSEN & MARTINEAU

/s/ Richard A. Vazquez_____
Richard A. Vazquez
*Attorneys for Defendant Steadfast Insurance Company*

2

Def Appendix 0002

## CERTIFICATE OF SERVICE

I hereby certify that on, I electronically filed the foregoing with the Clerk of Court using the Greenfiling system which sent notification of such filing to the following:

Milo Steven Marsden
marsden.steve@dorsey.com
Ashley M. Walker
walker.ashley@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111

Daniel J. Brown
brown.daniel@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
*Subject to Admission Pro Hac Vice*

*Attorneys for Plaintiff Dyno Nobel, Inc.*

_____/s/  Penny Brown_____
Legal Assistant

Def Appendix 0003

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Dyno Nobel, Inc. | Steadfast Insurance Company |

| (b) County of Residence of First Listed Plaintiff   Salt Lake County, Utah | County of Residence of First Listed Defendant   Cook County, Illinois |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Milo Steven Marsden, Dorsey & Whitney, 111 S. Main St., Suite 2100, SLC, UT 84111 801.933.7360 | Richard Vazquez, Snow Christensen & Martineau, 10 Exchange Place, 11th Floor, SLC 84111, 801.521.9000 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [x] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for:

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [x] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayments & Enforcement of Judgment | 330 Federal Employers' Liability | Product Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 835 Patent – Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury – Medical Malpractice | 385 Property Damage Product Liability | 720 Labor/Management Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 196 Franchise | | | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| | | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | **FEDERAL TAX SUITS** | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities – Employment | 535 Death Penalty | **IMMIGRATION** | 870 Taxes (U.S. Plaintiff or Defendant) | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities – Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | 871 IRS—Third Party 26 USC 7609 | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation – Transfer
- [ ] 8 Multidistrict Litigation – Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, and 1446

Brief description of cause:
Insurance coverage dispute.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   300,000 +

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Robert P. Faust   DOCKET NUMBER   210906012 - 3rd Dist. SLCty UT

DATE   1/6/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE

Case: 2:22-cv-00016
Assigned To : Pead, Dustin B.
Assign. Date : 1/6/2022
Description: Dyno Nobel v.
Steadfast Insurance

0004

# **Exhibit 1**

Def Appendix 0005

Milo Steven Marsden (#4879)
marsden.steve@dorsey.com
Ashley M. Walker (#15762)
walker.ashley@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373

Daniel J. Brown (MN#0298992)
brown.daniel@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
*Subject to Admission Pro Hac Vice*

*Attorneys for Plaintiff Dyno Nobel, Inc.*

---

**IN THE THIRD JUDICIAL DISTRICT COURT**
**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| Dyno Nobel, Inc., | **COMPLAINT** |
| Plaintiff, | Civil No. |
| vs. | Judge |
| Steadfast Insurance Company, | (TIER III) |
| Defendant. | |

Dyno Nobel, Inc. by and for its Complaint against Defendant Steadfast Insurance

Company, states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Dyno Nobel, Inc. ("Dyno Nobel") is a Delaware corporation with its

principal place of business in Salt Lake City, Utah.

Def Appendix 0006

2.      Defendant Steadfast Insurance Company ("SIC") is a Delaware corporation with its principal place of business in Schaumburg, Illinois.

3.      This Court has personal jurisdiction over SIC pursuant to Utah Code Ann. §78-27-24 because SIC transacts business in this state and issues insurance policies in this state, and specifically issued insurance policies to Plaintiff Dyno Nobel, as the Named Insured at 2795 E. Cottonwood Parkway, in Salt Lake City Utah.

4.      Subject matter jurisdiction and venue is proper under Utah Code § 78A-5-102(2) and § 78B-3-304(2).

5.      The relief sought in this Complaint qualifies for Tier 3 discovery pursuant to Utah R. Civ. P. 26(c) because Plaintiff seeks damages in excess of $300,000.

## GENERAL ALLEGATIONS

6.      SIC issued commercial general liability insurance policies to Dyno Nobel for the policy years 10-1-2014 to 10-1-2015 and 10-1-2015 to 10-1-2016, with policy numbers GLO-3793060-07 and GLO-3793060-08, respectively (the "Policies").

7.      Both policies are identical in all respects material to this Complaint.

8.      The Policies each contain a Declarations Page.

9.      The Declarations Page of each Policy provides that the General Aggregate Limit for each policy year is $3 million.

10.     The Declarations Page of each Policy provides that the "Form(s) and Endorsement(s) made a part of this Policy at the time of issue" can be found on the "Schedule of Forms and Endorsements."

11.     Each Policy also then contains a Schedule of Forms and Endorsements, each listing more than forty such forms and endorsements as being part of the Policy.

Def Appendix 0007

12.     A true and correct copy of each of the Policies, including all Forms and Endorsements listed on the Schedule of Forms and Endorsements is included as Exhibit A to this Complaint.

13.     Among the Forms and Endorsements listed and included in the Policies is an Endorsement adding "Coverage D Pollution Bodily Injury and Property Damage" to the Coverages under the Policies.

14.     The Endorsement adds a "Pollution Liability Aggregate Limit: $3,000,000."

15.     The Endorsement adds a definition to the Policy for "Pollution liability hazard:"

> "Pollution liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:
>
> a.  Premises you own, rent or occupy; or
>
> b.  Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

16.     The Coverage D Insuring Agreement provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> * * * *
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

17.     The Policies define "coverage territory" expressly to mean, in relevant part:

> "Coverage territory" means:
>
> a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

Def Appendix 0008

18.     On September 9, 2016, Teddy Scott and Melanie Scott filed an action against Dyno Nobel in the Eastern District of Missouri (the "Scott Action"), making claims against Dyno Nobel allegedly arising from Dyno Nobel's operations at a manufacturing facility in Pike County, Missouri (the "Dyno Plant").  A copy of the original complaint is attached as Exhibit B.

19.     On March 3, 2017, Teddy Scott and Melanie Scott filed a First Amended Complaint in the Scott Action.  A copy of the First Amended Complaint is attached as Exhibit C.

20.     According to the First Amended Complaint, on March 20, 2015, the Dyno Plant during start-up allegedly "released higher than normal levels of NOx emissions and other harmful emissions."  (Exhibit C ¶40).

21.     According to the First Amended Complaint, Teddy Scott "was exposed to, ingested, and/or inhaled the start-up NOx emissions from Dyno's Plant."  (Exhibit C ¶43).

22.     According to the First Amended Complaint, Teddy Scott allegedly suffers and continues to suffer both ongoing and periodic bodily injury as an alleged result of the alleged exposure.  (Exhibit C ¶¶57, 58, 66).

23.     Dyno Nobel tendered the Scott Action to SIC.

24.     On April 19, 2018, SIC acknowledged the tender, as well as the facts alleged in the Scott Action set forth above.

25.     SIC's April 19, 2018 letter denied Dyno Nobel's claim and refused to defend.

26.     SIC's April 19, 2018 denial was based entirely (and incorrectly) on alleged exclusions relating to Coverage A under the Policies, not Coverage D.

27.     There are no pollution exclusions applicable to Coverage D in the Policies.

28.     Dyno Nobel denied any wrongdoing in the Scott Action, and vigorously defended the Scott Action.

Def Appendix 0009

29.    SIC breached its obligations to cover and defend the Scott Action.

30.    On August 29, 2018, the Court in the Scott Action granted Dyno Nobel's motion for summary judgment and entered judgment dismissing the Scott Action.

31.    The Scott Action plaintiffs appealed, and on July 24, 2020, the United States Court of Appeals for the Eighth Circuit reversed the grant of summary judgment.

32.    The petition for rehearing was denied on August 28, 2020, and the matter was remanded to the United States District Court for the Eastern District of Missouri on September 4, 2020.

33.    The matter is currently scheduled for trial starting on April 18, 2022.

34.    On December 8, 2020, Dyno Nobel updated SIC regarding the status of the Scott Action and again requested that SIC defend Dyno Nobel and cover the Scott Action, including engaging in settlement negotiations.  SIC refused.

35.    Dyno Nobel has incurred and continues to incur substantial costs in defending the Scott Action, and will continue to incur those costs.

36.    Current defense costs total more than $1,000,000.

37.    To date, SIC takes the position that the Scott Action is not covered, has not defended Dyno Nobel, offered to pay, nor paid any amount of defense costs or toward settlement of the matter.

## COUNT I – BREACH OF CONTRACT

38.    The foregoing paragraphs of the Complaint are incorporated herein.

39.    The Policies include Coverage D, which covers the Scott Action, and requires SIC to cover and defend the Scott Action.

40.    SIC has refused to cover and/or defend the Scott Action.

Def Appendix 0010

41.     SIC has failed to pay any amount of defense costs, even though, and among other things, the defense is and was demonstrably reasonable and meritorious.

42.     SIC is in breach of its insurance obligations.

43.     Dyno Nobel has suffered damages in an amount in excess of $1,000,000 expended in defense of the Scott Action, as a result of SIC's breach, plus such other amounts as may be incurred in the matter.

44.     Dyno Nobel continues to incur additional damages as a result of the ongoing defense of and resolution of the Scott Action, including an adverse judgment, if any.

## COUNT II – DECLARATORY JUDGMENT

45.     The foregoing paragraphs of the Complaint are incorporated herein.

46.     SIC is obligated to cover and defend the Scott Action, including any ongoing and subsequent proceedings, including an adverse judgment, if any.

47.     SIC has denied that it is obligated to cover and defend the Scott Action, including any ongoing and subsequent proceedings.

48.     Pursuant to Utah Code § 78B-6-401, Dyno Nobel is entitled to declaratory judgment that SIC is obligated to cover and defend the Scott Action, including any ongoing and subsequent proceedings, and cover an adverse judgment, if any.

WHEREFORE, Dyno Nobel demands judgment against SIC in an amount to be proven at trial, not less than $1,000,000, and declaratory judgment against SIC that it is required to cover and defend the Scott Action, including all ongoing and subsequent proceedings, as well as interest, fees and all other relief the Court deems just and proper.

Def Appendix 0011

DATED this 8th day of November, 2021.     DORSEY & WHITNEY LLP


By: */s/  Ashley M. Walker*_____
     Milo Steven Marsden
     Ashley M. Walker

     *Attorneys for Plaintiff Dyno Nobel, Inc.*

Def Appendix 0012

# EXHIBIT A

Def Appendix 0013

**COMMERCIAL INSURANCE**

# ZURICH

**COMMON POLICY DECLARATIONS**

| Policy Number | GLO 3793060-07 | Renewal of Number | GLO 3793060-06 |

**Named Insured and Mailing Address**
DYNO NOBEL, INC.
(SEE NAMED INSURED ENDT)
2795 E COTTONWOOD PKWY
SALT LAKE CITY UT 84121-7032

**Producer and Mailing Address**
MARSH USA, INC.
15 W SOUTH TEMPLE STE 700
SALT LAKE CITY UT 84101-1533

Producer Code   29067-000

Policy Period:  Coverage begins   10-01-2014   at 12:01 A.M.;  Coverage ends 10-01-2015   at 12:01 A.M.

The name insured is  ☐ Individual   ☐ Partnership   ☒ Corporation
☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                        PREMIUM  $   423,060.00
 issued by STEADFAST INSURANCE COMPANY

| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.** This premium does not include Taxes and Surcharges. | **TOTAL** | **$** | 423,060.00 |
| **Taxes and Surcharges** | **TOTAL** | **$** | |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this        day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Def Appendix 001

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number: GLO 3793060-07

# STEADFAST INSURANCE COMPANY

Named Insured
DYNO NOBEL, INC.

Policy Period: Coverage begins 10-01-2014 at 12:01 A.M.; Coverage ends 10-01-2015 at 12:01 A.M.

Producer Name: MARSH USA, INC.                    Producer No. 29067-000

**Item 1.** Business Description: EXPLOSIVES

**Item 2.** Limits of Insurance

**The Limits of Insurance stated below are the most available to pay damages, medical expenses and "allocated loss adjustment expenses" covered by this policy. Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.**

LIMITS

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | 3,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | 3,000,000 | |
| EACH OCCURRENCE LIMIT | 3,000,000 | |
| DAMAGE TO PREMISES | | |
| RENTED TO YOU LIMIT | 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | 3,000,000 | |
| | | Any one person or organization |

**Item 3.** Form of Business and Location Premises

CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 4.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 5.** Premiums

Coverage Part Premium: $         388,754

Other Premium: $34,306TRIA

Total Premium: $         423,060

Def Appendix 0018

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number: GLO 3793060-07

Named Insured: DYNO NOBEL, INC.

Policy Period: Coverage begins 10-01-2014 at 12:01 A.M; Coverage ends 10-01-2015 at 12:01 A.M

Producer Name: MARSH USA, INC.                    Producer No. 29067-000

**Item 1.** Limits of Insurance

$ 3,000,000 Aggregate Limit
$ 3,000,000 Each Claim Limit

**Item 2.** Form of Business:

[ ] Individual   [ ] Parnership   [ ] Joint Venture   [X] Corporation
[ ] Other
_____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|---|---|---|---|---|
| 92100 | IF ANY | $ INCL | Per Employee | $ INCL |
| | | $ INCL | Flat Charge | $ INCL |

Total Advance Premium For This Coverage Part:     $     INCL

Audit Period:   [ ] Annual   [ ] Semi-annual   [ ] Quarterly   [ ] Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

9/30/2008   (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

Def Appendix 0016

**Policy Number**
**GLO 3793060-07**

### SCHEDULE OF FORMS AND ENDORSEMENTS

**Steadfast Insurance Company**

Named Insured   DYNO NOBEL, INC.                                    Effective Date: 10-01-14
                                                                    12:01 A.M., Standard Time

Agent Name   MARSH USA, INC.                                        Agent No.   29067-000

COMMON & GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GL-D-1286-A CW | 09-06 | COMMERCIAL GEN LIAB COVERAGE PART DEC |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC – CLAIMS MADE |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-621-A CW | 10-02 | SCHEDULE OF NAMED INSURED(S) |
| U-GL-1287-B CW | 04-13 | COMMERCIAL GEN LIAB COVERAGE FORM |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| STF-GU-199-B | 01-09 | IMPORTANT NOTICE SEV. OF SUIT/IN WITNESS |
| U-GL-1057-A CW | 05-02 | LTD CARE,CUSTODY OR CONTROL ENDT |
| U-GL-1063-A-CW | 12-01 | FUNGUS EXCLUSION ENDORSEMENT |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1205-B CW | 01-08 | WELDING HEALTH HAZARD EXCLUSION |
| U-GL-1326-B CW | 10-07 | DEDUCTIBLE |
| U-GL-1342-A CW | 10-07 | LEAD LIABILITY EXCLUSION |
| U-GL-1517-B CW | 04-13 | RECORD OR DISTRB OF MATRL OR INFO EXCL |
| U-GL-1521-A CW | 10-12 | BLANKET NOTIFICATION TO OTH CANC/NONREN |
| U-GL-441-B CW | 12-01 | AIRCRAFT PROD., GROUNDING & TESTING EXCL |
| U-GL-911-B CW | 09-05 | CLAIM SERIES ENDORSEMENT |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-923-B CW | 06-04 | SILICA OR SILICA MIXED DUST EXCLUSION |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GU-739-A CW | 09-06 | DEFENSE WITHIN LIMITS NOTICE |
| CG 01 23 | 03-97 | INDIANA CHANGES POLLUTION EXCLUSION |
| CG 01 34 | 08-03 | MISSOURI CHANGES –POLLUTION EXCLUSION |
| CG 01 54 | 04-13 | VERMONT CHANGES-POLLUTION |
| CG 01 86 | 12-04 | UT CHANGES |
| CG 20 11 | 04-13 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 15 | 04-13 | ADDL INSD-VENDORS |
| CG 20 34 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUI |
| CG 21 16 | 04-13 | EXCL-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCL ENDT |
| CG 21 55 | 09-99 | TOTAL POLLUTION EXCL. WITH HOSTILE FIRE |
| CG 24 17 | 10-01 | CONTRACTUAL LIABILITY – RAILROADS |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 66 | 09-08 | UTAH CHANGES-CANC & NONRENL |
| U-GU-767-A CW | 01-08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TER |
| U-GU-692-C CW | 06-13 | DISCL OF PREM. RELATING TO DISP. OF TRIA |
| U-GL-1114-A CW | 10-02 | NOTICE OF CANCELLATION |
| U-GL-1114-A CW | 10-02 | BROAD NAMED INSURED |

**U-GU-619-A CW (10/02)**

Def Appendix 0017

**Policy Number**
**GLO 3793060-07**

**SCHEDULE OF NAMED INSURED(S)**

# STEADFAST INSURANCE COMPANY

Named Insured    DYNO NOBEL, INC.                Effective Date:    10-01-14
                                                 12:01 A.M., Standard Time

Agent Name       MARSH USA, INC.                 Agent No.    29067-000

NAMED INSURED

DYNO NOBEL, INC.
TECH REAL ESTATE HOLDING LLC
SIMSBURY HOPMEADOW STREET LLC
MINNESOTA EXPLOSIVES CO
SJL DRILL SERVICES, INC
CMMPM LLC
CMMPM LP
MT. STATE BIT SERVICES,INC
DYNO NOBEL HOLDINGS USA II
DYNO NOBEL HOLDING AS
EVENSON EXPLOSIVES LLC
DNX DRILLING INC
HALL EXPLOSIVES, INC
ST LAWRENCE EXPLOSIVES CORP
DBA MOUNTAIN VALLEY EXPLOSIVES
DYNO EAST KENTUCKY INC
ETI EXPORT, INC
DBA EXPLO TECH
DBA EXPLOSIVES ENERGIES
DBA BLASTRITE SERVICES
DBA RIMROCK EXPLOSIVES
DBA GOLDEN STATE EXPLOSIVES
AMERICAN EAST EXPLOSIVES, INC
AMERICAN WEST EXPLOSIVES, INC
ETI HOLDING CORPORATION
DYNO NOBEL HOLDINGS USA II, INC
IRECO HOLDINGS CO
DYNO NOBEL TRANSPOTATION INC
DYNO NOBEL LEASING, INC
DYNO NOBEL HOLDINGS USA, INC
DYNO NOBEL HOLDINGS ASA
DYNO NOBEL ASA

Def Appendix 0018

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**The Limits of Insurance shown in the Declarations is the most available to pay any combination of damages, medical expenses and "allocated loss adjustment expenses" covered by this policy.  Various other provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.**

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**  The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

        **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of:

            **(a)**  Judgments or settlements under Coverages **A** or **B**;

            **(b)**  Medical expenses under Coverage **C**; or

            **(c)**  "Allocated loss adjustment expenses".

        No other obligation or liability to pay sums or perform acts or services is covered.

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Def Appendix 0019

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

Def Appendix 0020

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

      **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      **(i)** Any insured; or

      **(ii)** Any person or organization for whom you may be legally responsible; or

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph does not apply to:

      **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

   **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Def Appendix 0021

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

Def Appendix 0022

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

Def Appendix 0023

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

        **(1)** The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of:

            **(a)** Judgments or settlements under coverages **A** or **B**;

            **(b)** Medical expenses under Coverage **C**; or

            **(c)** "Allocated loss adjustment expenses".

    No other obligation or liability to pay sums or perform acts or services is covered.

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

    **a. Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    **b. Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c. Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

    **d. Criminal Acts**

    "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **e. Contractual Liability**

    "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    **f. Breach Of Contract**

    "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   U-GL-1287-B CW (04/13)

Def Appendix 0024

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

Def Appendix 0025

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   U-GL-1287-B CW (04/13)

Def Appendix 0026

    **b.**  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    **c.**  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    **d.**  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    **e.**  All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

    **f.**  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    **g.**  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    **a.**  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    **b.**  This insurance applies to such liability assumed by the insured;

    **c.**  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    **d.**  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    **e.**  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    **f.**  The indemnitee:

        **(1)**  Agrees in writing to:

            **(a)**  Cooperate with us in the investigation, settlement or defense of the "suit";

            **(b)**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            **(c)**  Notify any other insurer whose coverage is available to the indemnitee; and

            **(d)**  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        **(2)**  Provides us with written authorization to:

            **(a)**  Obtain records and other information related to the "suit"; and

            **(b)**  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" but will reduce the limits of insurance as "allocated loss adjustment expenses".

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "allocated loss adjustment expenses" or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.**  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

Def Appendix 0027

    **b.**  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.**  Each of the following is also an insured:

    **a.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

        **(1)**  "Bodily injury" or "personal and advertising injury":

            **(a)**  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            **(b)**  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

            **(c)**  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

            **(d)**  Arising out of his or her providing or failing to provide professional health care services.

        **(2)**  "Property damage" to property:

            **(a)**  Owned, occupied or used by;

            **(b)**  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

        you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.**  Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)**  With respect to liability arising out of the maintenance or use of that property; and

        **(2)**  Until your legal representative has been appointed.

    **d.**  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.**  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **b.**  Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **c.**  Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      U-GL-1287-B CW (04/13)

Def Appendix 0028

**SECTION III – LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.**  Insureds;

    **b.**  Claims made or "suits" brought; or

    **c.**  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

    **a.**  Medical expenses under Coverage **C**;

    **b.**  Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

    **c.**  Damages under Coverage **B**; and

    **d.**  "Allocated loss adjustment expenses" arising from **a.**, **b.**, or **c.** above.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and "allocated loss adjustment expenses" arising from claims or "suits" for damages under coverage **A** because of "bodily injury" or "property damage" included in the "products-completed operations hazard".

4.  Subject to Paragaph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization and "allocated loss adjustment expenses" arising from claims or "suits" for damages under Coverage **B**.

5.  Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.**  Damages under Coverage **A**;

    **b.**  "Allocated loss adjustment expenses" arising from damages under Coverage **A**; and

    **c.**  Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.  Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner and related "allocated loss adjustment expenses".

7.  Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1.  **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)**  How, when and where the "occurrence" or offense took place;

    **(2)**  The names and addresses of any injured persons and witnesses; and

    **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**  If a claim is made or "suit" is brought against any insured, you must:

    **(1)**  Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)**  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Def Appendix 0029

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

        This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

    **b. Excess Insurance**

        **(1)** This insurance is excess over:

            **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

                **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

                **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

                **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

                **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

            **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

        **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

            **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

            **(b)** The total of all deductible and self-insured amounts under all that other insurance.

        **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.   U-GL-1287-B CW (04/13)

Def Appendix 0030

   **c.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.** **Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.** **Representations**

By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

   **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.** **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.** **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.** **Duties – Claim Settlement and Allocated Loss Adjustment Expenses**

As soon as our right and duty to defend the insured against any "suit" seeking damages end, you will promptly assume control of the settlement of claims and defense of "suits". A list of outstanding claims and "suits" will be made available to the First Named Insured upon request.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and includes but is not limited to all Supplementary Payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses

Def Appendix 0031

reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

3.　"Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

4.　"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5.　"Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

6.　"Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7.　"Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8.　"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9.　"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

10.　"Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          U-GL-1287-B CW (04/13)

Def Appendix 0032

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**11.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

Def Appendix 0033

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**17.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

      **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

      **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**20.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**21.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

     Includes copyrighted material of Insurance Services Office, Inc., with its permission.      U-GL-1287-B CW (04/13)

Def Appendix 0034

**22.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

Def Appendix 0035

# Employee Benefits Liability – Claims-Made Coverage Form

**This Coverage Form provides *claims-made* coverage.  Please read the entire form carefully.**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

**Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.**

## Section I. Coverage - Employee Benefit Liability

**1.  Insuring Agreement**

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages  because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

  **(1)** The amount we pay for damages is limited as described in Section II. - Limits of  Insurance of this Coverage Part; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.** **(1)** This insurance applies to an act, error or omission only if:

  **a.** A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

  **b.** The act, error, or omission takes place in the "coverage territory";

  **c.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

  **d.** The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

**(2)** A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured"  or by us, whichever comes first.   "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2.  Exclusions**

This insurance does not apply to:

**A.** "Bodily injury", "property damage", or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit"  arising out of an insurer's or other provider's  failure  to  perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

  **(1)** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

  **(2)** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

Def Appendix 0036

**(3)** Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

**(4)** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

**a.** The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

**b.** The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** "Claims" made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

**a.** How, when, and where the act, error, or omission took place;

**b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

**(2)** If a "claim" is received by any "insured", you must:

**a.** Immediately record the specifics of the "claim" and the date received; and

**b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

**(3)** You and any other involved "insured" must:

**a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

**b.** Authorize us to obtain records and other information;

Def Appendix 0037

**c.** Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

**(1) Primary Insurance**

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

**(2) Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

**a.** No Retroactive Date is shown in the Declarations of this insurance; or

**b.** The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**i.** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**ii.** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**(3) Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom "claim" is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

U-GL-849-B CW (8/04)
Page 3 of 4

Def Appendix 0038

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Claim" means:

The receipt by you of a demand for money or services which alleges an act, error, or omission in the "administration" of your "employee benefit programs."

**E.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

**F.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**G.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**H.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**I.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

Def Appendix 0039



# Important Notice
**Service of Suit and In Witness Clause**

### Service of Suit

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company,  801 Adlai Stevenson Drive, Springfield, IL 62703.  In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

### In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                   Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

Def Appendix 0040

# LIMITED CARE, CUSTODY OR CONTROL ENDORSEMENT

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**

<strong>SCHEDULE</strong>

**Each Occurrence Deductible:**   ENDT

**Each Occurrence Limit:**   $ 1,000,000

**Aggregate Limit:**   $ 1,000,000

1. **Insuring Agreement**

   a.   We will pay for "property damage" to "covered property" in the care, custody, or control of the insured caused by an "occurrence" to which this insurance applies.

   b.   This insurance applies to "property damage" to "covered property" only if:

      (1)   The "property damage" to "covered property" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)   The "property damage" to "covered property" occurs during the policy period; and

      (3)   The damages are incurred and reported to us within one year of the date of the "occurrence."

   c.   We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.

2. **Exclusions**

   We will not pay for damages for "property damage" to "covered property":

   a.   Eligible for coverage under COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the policy to which this endorsement is attached.

   b.   On premises owned, leased, rented or occupied with permission, by the insured.

   c.   Excluded under COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, except for item (4) and (5) of exclusion j of the policy to which this endorsement is attached.

   d.   Which are tools or equipment of others in the care, custody or control of the insured.

   e.   Any architect, engineer, or surveyor engaged by you but only with respect to liability arising out of your premises or "your work."

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3.   **Limits of Insurance**

   a.   The Limited Care, Custody or Control Aggregate Limit shown in the **SCHEDULE** of this endorsement is the most we will pay for "property damage" to "covered property" under the coverage provided by this endorsement.

   b.   Subject to a. above, The Each Occurrence Limit shown in the **SCHEDULE** of this endorsement is the most we will pay in excess of the limited Care, Custody or Control deductible for "property damage" to "covered property" under the coverage provided by this endorsement arising out of any one "occurrence."

4.   **Other Insurance**

If valid and collectible insurance is available to the insured for a loss we cover under this endorsement our obligations are limited as indicated in 4. Other Insurance of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS of the policy to which this endorsement is attached.

5.   **Definition**

The following definition shall only apply as respects the Limited Care, Custody or Control coverage provided by this endorsement.

"Covered Property" means:

a.   Personal property in the care, custody or control of the insured; or

b.   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0042

# Fungus Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**Products/Completed Operations Liability Coverage Part**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused directly or in-directly, in whole or in part, by:

1.  Any "fungus(i)" or "spore(s)", or

2.  Any substance, vapor or gas produced by or arising out of any "fungus(i)" or "spore(s)", or

3.  Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(i)" or "spore(s)"

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

For purposes of this endorsement the following definitions are added:

"Fungus(i)" includes, but is not limited to, any form or type of mold, mushroom or mildew.

"Spore(s)" means any reproductive body produced by or arising out of any "fungus(i)".

U-GL-1063-A CW (12/01)
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Def Appendix 0043

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions**  of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions**  of **Coverage B – Personal And Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.  "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1.   "Fungi"or "bacteria"; or

   2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.  Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.  For the purposes of this exclusion, the following definitions are added:

   1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

   3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Def Appendix 0044

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

2.  **Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.  Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.  Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0045



# Welding Health Hazard Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Owners and Contractors Protective Liability Coverage Form--Coverage For Operations of Designated Contractor**
**Products-Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Form**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.   Exclusions**

This insurance does not apply to:

**Welding Health Hazard**

"Bodily injury" caused directly or indirectly by  the actual, alleged or threatened inhalation, ingestion, absorption, or  exposure to harmful fumes or gases caused by "welding materials and equipment" used in connection with the process of welding or fusing together of any metals or other materials.

For the purposes of this exclusion, the following definition applies:

"Welding materials and equipment" means:

(1)  Welding machinery or other welding process equipment;

(2)  Welding rods;

(3)  Electrodes; or

(4)  Any consumable products including, but not limited to, wires, fluxes, coatings or cleaning agents.

# Deductible



| Policy No. | Eff. Date of Pol. | Eff. Date of End. |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part
Employee Benefits Liability Coverage Part
Liquor Liability Coverage Part
Stop Gap Employers Liability Coverage Part**

**DEDUCTIBLE SCHEDULE**

| Coverage | | | Deductible Amount | Basis |
|---|---|---|---|---|
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability All persons or organizations | $ 500,000 | Each "Occurrence" |
| | | "Bodily Injury" Liability Only All persons or organizations | | Each "Occurrence" |
| | | "Property Damage" Liability Only All persons or organizations | | Each "Occurrence" |
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability | | Each Claim |
| | | "Bodily Injury" Liability Only | | Each Claim |
| | | "Property Damage" Liability Only | | Each Claim |
| Coverage | B. | "Personal and Advertising Injury" Liability By offense – Any one person or organization | $ 500,000 | Each Claim |
| Coverage | C. | Medical Payments | | Any One Person |
| Additional Coverage | | Employee Benefits Liability | $ 500,000 | Each Act, Error or Omission |
| Additional Coverage | | Liquor Liability | | Each Common Cause |
| Additional Coverage | | Stop Gap Employers Liability Stop Gap Employers Liability - disease | | Each Accident Each "Employee" |
| Aggregate Deductible Amount | | | | ☐ Adjustable at a rate      of per of ☐ Flat |
| Initial Exposure | | | | |
| Minimum Aggregate Deductible Amount | | | | |

Def Appendix 0047

## ALLOCATED LOSS ADJUSTMENT EXPENSE SELECTION SCHEDULE

| | Select One | |
|---|---|---|
| Option 1 | [X] | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will contribute toward your Deductible Amount and your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 2 | [ ] | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense" as follows: |
| | | (a) If the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "allocated loss adjustment expense", then you will reimburse us for all "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**; or |
| | | (b) If the total amount payable for other than "allocated loss adjustment expense" exceeds the Deductible Amount, you will reimburse us a pro-rata share of total "allocated loss adjustment expense" based on the ratio of the Deductible Amount divided by the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount. "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 3 | [ ] | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |

**If no option is selected, Option 3 will apply.**

**A.   How the Deductible Amount Applies**

You will reimburse us for the Deductible Amount(s) shown in the **Deductible Schedule** and for "allocated loss adjustment expenses" incurred based on the **Allocated Loss Adjustment Expense Selection Schedule**. The Deductible Amount(s) applies as follows:

1.   If an Each Occurrence Deductible is shown, the Deductible Amount applies to all sums payable because of any one "Occurrence", regardless of the number of persons or organizations who sustain damages because of that "Occurrence".

2.   If an Each Claim Deductible is shown, the Deductible Amount applies to all sums payable for each claim, sustained by any one person or organization.

   a.   For Other than Coverage B, to all sums payable for each claim, sustained by any one person or organization, and

   b.   For Coverage B, to all damages sustained by any one person or organization as the result of an offense.

3.   Medical Payments - If an Any One Person limit is shown, the Deductible Amount applies to all sums payable to any one person as a result of an accident sustained by that person.

Def Appendix 0048

4. Employee Benefits Liability - If an Each Act, Error or Omission Deductible is shown, the Deductible Amount applies to all sums payable for all damages sustained by any one "Employee", including the "Employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the administration of employee benefit programs.

5. Liquor Liability - If a Common Cause Deductible is shown, the Deductible Amount applies to all sums payable for all injury sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

6. Stop Gap Employers Liability - If an Each Accident Deductible is shown, the Deductible Amount applies to all sums payable as the result of an accident, regardless of the number of people who sustain damages because of that accident.

7. Stop Gap Employers Liability - disease - If an Each Employee Deductible is shown, the Deductible Amount applies to all sums payable because of any one disease, and applies separately to each affected "Employee".

**B.   Deductible Provisions**

1. If more than one Deductible Amount applies to sums payable arising from the same "incident" because more than one Coverage applies, you will be responsible for each and every applicable Deductible Amount.

2. Deductible Amount(s) apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

3. Your obligation to pay the Deductible Amount(s) shown on this policy is not fulfilled by:

    a. The payment of a Deductible Amount under any other policy; or

    b. Any payment made by us or another insurance company;

    even if 3.a. or 3.b. above applies to the same "incident" as the Deductible Amount due under this policy.

4. If more than one policy issued by us applies to sums payable because of a single continuous "incident", the Deductible Amount(s) applies separately to each policy that we issue to which this endorsement or a similar Deductible Endorsement applies. Deductible Amounts also apply separately to each annual period and any remaining period of less than 12 months as described in **B.**2. above.

5. If a Coverage Part or Additional Coverage of this policy specifically applies a separate deductible(s):

    a. the separate additional deductible amount applies to any loss separately and before the Deductible Amount(s) shown on the Schedule of this endorsement; and

    b. the Deductible Amount(s) shown on the Schedule of this endorsement applies only if the loss exceeds the separate additional deductible amount described in 5.a. above, subject to the other terms and conditions of this endorsement.

**C.   Aggregate Deductible Amount**

1. The Aggregate Deductible Amount shown in the **Deductible Schedule** is the most you must reimburse us for the sum of:

    a. all applicable Deductible Amount(s) as shown in the **Deductible Schedule**; and

    b. all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule**, above.

Def Appendix 0049

This single Aggregate Deductible Amount applies to the entire policy period and to any remaining extension period.

2.   If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as adjustable, the final Aggregate Deductible Amount will be determined at the end of the policy period by an audit of your records, and will be based upon the Rate shown in the **Deductible Schedule** multiplied by the final audited Exposure. The amount shown in the **Deductible Schedule** as the Aggregate Deductible Amount is an estimated amount, and is based on an estimate of what the audit of your records will develop.

In no event will the final audited Aggregate Deductible Amount be less than the Aggregate Deductible Amount shown in the **Deductible Schedule**, unless a Minimum Aggregate Deductible Amount is shown in the **Deductible Schedule**. If a Minimum Aggregate Deductible Amount is shown, the final audited Aggregate Deductible Amount will not be less than the Minimum Aggregate Deductible Amount.

3.   If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as Flat, the Aggregate Deductible Amount will not be adjusted. In no event will the Flat Aggregate Deductible Amount be less than or more than the Aggregate Deductible Amount shown in the **Deductible Schedule**.

4.   If no Aggregate Deductible Amount is stated in the **Deductible Schedule**, then your obligation to reimburse us for the sum of all applicable Deductible Amount(s) as shown in the **Deductible Schedule** and all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, is unlimited.

**D.   Allocated Loss Adjustment Expense Reimbursement**

In accordance with the **Allocated Loss Adjustment Expense Selection Schedule**:

1.   If Option 1 is selected, "allocated loss adjustment expense" reimbursements made by you contribute to your Deductible Amount and Aggregate Deductible Amount.

2.   If Option 2 or Option 3 is selected, then you will reimburse us for all or pro-rata "allocated loss adjustment expense", as may apply, in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, even if the Deductible Amount or the Aggregate Deductible Amount, if applicable, is exceeded.

**E.   Application of the Deductible Amount to Payable Amounts**

1.   You will reimburse us for "allocated loss adjustment expense" according to the option selected in the **Allocated Loss Adjustment Expense Selection Schedule**.

2.   Upon settlement or final adjudication of a claim, we will apply the Deductible Amount against payable amounts as follows:

a.   Sums other than those attributable to "allocated loss adjustment expense"; then

b.   "Allocated loss adjustment expense" already reimbursed by you; then

c.   "Allocated loss adjustment expense" yet to be reimbursed by you, if applicable.

**F.   Effect of Deductible Amount on Limits of Insurance**

The applicable limits of insurance for the coverage part to which a Deductible Amount applies will be reduced only by that portion of the Deductible Amount that is not attributable to "allocated loss adjustment expenses".

**G.   Conditions**

**1.   Voluntary Payments**

If you voluntarily make any payment, assume any obligation or incur any expense, without our consent, then you do so at your own cost. Any such voluntary payment, assumed obligation or incurred expense does not contribute towards any applicable Deductible Amount(s) or Aggregate Deductible Amount under this policy.

**2.   Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages.

**3.   Payment of Amounts Owed Under This Endorsement**

a.   We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.

b.   If you fail to reimburse us for any amounts as required by this endorsement or policy, we may cancel this policy for nonpayment in accordance with the applicable law. Cancellation of this policy does not relieve you from any deductible obligations reimbursable by you.

c.   The first Named Insured shown in the Declarations is authorized to and will reimburse us for all amounts paid by us on behalf of all "insureds".

d.   Each Named Insured is jointly and severally liable for all reimbursements due to us under this endorsement, whether or not that Named Insured is involved in the claim, proceeding or "suit" causing any such amount to be due to us.

**H.   Definitions**

1.   "Allocated loss adjustment expense" is an expense directly allocable to a specific claim including but not limited to: all supplementary payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2.   "Incident", for purposes of this endorsement only, means an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other event, as defined or used in our policy, to which a Deductible Amount(s) applies.

**I.   Other Terms**

1.   The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:

a.   Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and

Def Appendix 0051

b.   Your duties in the event of a claim or circumstances likely to result in a claim.

2.   You understand that your duties under this endorsement may continue after this policy expires or is cancelled.

Def Appendix 0052

# Lead Liability Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2**. **Exclusions**, of **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

    **(a)** Exposure to or existence of lead, paint containing lead, or any other material, product  or substance containing lead; or

    **(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

    whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

    **(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

Def Appendix 0053

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **2.  Exclusions**

   This insurance does not apply to:

   **q.  Recording And Distribution Of Material Or Information In Violation Of Law**

   "Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

   **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

   **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

   **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

   **2.  Exclusions**

   This insurance does not apply to:

   **p.  Recording And Distribution Of Material Or Information In Violation Of Law**

   "Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

   **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

   **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0054

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Def Appendix 0055

# Blanket Notification to Others of Cancellation or Non-Renewal



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part by written notice to the first Named Insured, we will mail or deliver notification that such Coverage Part has been cancelled or non-renewed to each person or organization shown in a list provided to us by the first Named Insured if you are required by written contact or written agreement to provide such notification.  However, such notification will not be mailed or delivered if a conditional notice of renewal has been sent to the first Named Insured.  Such list:

    **1.** Must be provided to us prior to cancellation or non-renewal;

    **2.** Must contain the names and addresses of only the persons or organizations requiring notification that such Coverage Part has been cancelled or non-renewed; and

    **3.** Must be in an electronic format that is acceptable to us.

**B.** Our notification as described in Paragraph **A.** of this endorsement will be based on the most recent list in our records as of the date the notice of cancellation or non-renewal is mailed or delivered to the first Named Insured.  We will mail or deliver such notification to each person or organization shown in the list:

    **1.** Within seven days of the effective date of the notice of cancellation, if we cancel for non-payment of premium; or

    **2.** At least 30 days prior to the effective date of:

        **a.** Cancellation, if cancelled for any reason other than nonpayment of premium; or

        **b.** Non-renewal, but not including conditional notice of renewal.

**C.** Our mailing or delivery of notification described in Paragraphs **A.** and **B.** of this endorsement is intended as a courtesy only.  Our failure to provide such mailing or delivery will not:

    **1.** Extend the Coverage Part cancellation or non-renewal date;

    **2.** Negate the cancellation or non-renewal; or

    **3.** Provide any additional insurance that would not have been provided in the absence of this endorsement.

**D.** We are not responsible for the accuracy, integrity, timeliness and validity of information contained in the list provided to us as described in Paragraphs **A.** and **B.** of this endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0056

# Aircraft Products, Grounding, and Testing Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured:**

**Address (including Zip Code):**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products and Completed Operations Coverage Part**

This policy does not apply to any "bodily injury" or "property damage" arising out of "Aircraft Products," "Grounding" or "Testing."

"Aircraft Products" means:

1. aircraft, missiles or spacecraft; or

2. any other goods or products produced or furnished by the insured for the manufacture, repair, operation, maintenance, use or entrustment to others of aircraft, missiles or spacecraft, including but not limited to the following items:

    (A) goods or products installed in, used in connection with, or used as spare parts in aircraft, missiles or spacecraft; or

    (B) ground support and control equipment; or

    (C) ground handling tools and equipment;

3. any training aids, instructions, manuals blueprints, engineering data or engineering advice relating to the items described in 1 and 2 above; or

4. any services or labor provided by the insured or by others trading under the insured's name relating to **1.**, **2.**, or **3**. above.

"Grounding" means:

1. the withdrawal of any "aircraft products" from flight operations, or

2. the imposing of speed, passenger or load restrictions on such "aircraft products" due to the existence of, or the alleged or suspected existence of any defect, fault or condition in any "aircraft products"**;**

whether the "aircraft products" withdrawn are owned or operated by the same or different persons, firms or corporations.

A "grounding" begins:

(1) on the date that any accident or occurrence results in disclosure of a known or suspected defect, fault or condition; or

(2) on the date the "aircraft products" are first withdrawn from service due to a known or suspected defect, fault or condition,

whichever first occurs.

"Testing" means examination, observation, evaluation or measuring of the performance of "aircraft products," either while in the air or on the ground.

Countersigned: _____
                          **Authorized Representative**

Def Appendix 0057

# Claim Series Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. **Section I. Coverage A  Bodily Injury and Property Damage** is amended to include the following:

   All  "occurrences"  which result in a series of  claims or "suits" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" due to a "common cause or condition" of "your products" or "your work" shall be deemed to be just one "occurrence", regardless of the total number of:

   a.   insureds;

   b.   claims made or "suits" brought;

   c.   persons or organizations making claims or bringing "suits"; or

   d.   potential  "occurrences" that might otherwise have applied in the absence of this endorsement.

2. The following additional **Definition** is added:

   "Common Cause or Condition" means the same or similar design error, omission or defect, manufacturing defect, or failure by the insured to warn of a potential hazard in or of "your products" or "your work".

Def Appendix 0058

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1.  It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

(1) "Bodily injury" or "personal and advertising injury":

 (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

 (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

 (c) Arising out of his or her providing or failing to provide professional health care services.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0059

# Incidental Medical Malpractice
# Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.**    Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

    **2.**    Each of the following is also an insured:

        **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insured for:

        **(1)**    "Bodily injury" or "personal and advertising injury":

            **(d)**    Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

                **(1)**    medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

                **(2)**    emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.**    Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Def Appendix 0060

# Silica or Silica Mixed Dust Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|------------|-------------------|-------------------|-------------------|----------|-------------|--------------|
|            |                   |                   |                   |          | $          | $            |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.   Exclusions**

This insurance does not apply to:

**Silica or Silica Mixed Dust**

A.   "Bodily injury", "property damage"  or  "personal and advertising injury" caused directly or indirectly, in whole or in part, by  the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of "silica"; or

B.   Loss, costs or expenses arising out of the  abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of "silica" by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definition applies:

"Silica" means:

(1)   Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

**(2)**   Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

U-GL-923-B CW (6/04)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0061

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

Def Appendix 0082

## DEFENSE WITHIN LIMITS NOTICE

UNLIKE MOST LIABILITY INSURANCE POLICIES IN WHICH PAYMENT OF DEFENSE COSTS DOES NOT REDUCE THE POLICY LIMITS, THIS POLICY CONTAINS A 'DEFENSE WITHIN THE LIMITS' PROVISION. THE PROVISION INCLUDES THE INSURER'S COSTS FOR PROVIDING LEGAL DEFENSE AGAINST A CLAIM ALONG WITH ANY CLAIM SETTLEMENT AMOUNT WITHIN THE STATED POLICY LIMITS.  WE HAVE THE RIGHT AND DUTY TO DEFEND THE INSURED AGAINST ANY SUIT SEEKING DAMAGES FOR BODILY INJURY  OR PROPERTY DAMAGE TO WHICH THIS INSURANCE APPLIES. HOWEVER, ONCE THE POLICY LIMIT IS REACHED, THE INSURER'S RESPONSIBILITY TO PAY ANY FURTHER AMOUNTS FOR DEFENSE COSTS OR FOR ANY DAMAGES THAT MAY BE AWARDED ENDS, EXCEPT THAT THE INSURER WILL PAY DAMAGES FOR STATUTORILY REQUIRED LIABILITY INSURANCE TO THE LIMIT REQUIRED BY LAW.

Def Appendix 0063

COMMERCIAL GENERAL LIABILITY
CG 01 23 03 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES -  POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury And Property Damage Liability Coverage (Section I - Coverages)** and to Paragraph **2., Exclusions** of **Personal And Advertising Injury Liability Coverage (Section I - Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

Def Appendix 0064

COMMERCIAL GENERAL LIABILITY
CG 01 34 08 03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage** and to Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage B – Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

POLICY NUMBER: GLO 3793060-07         **COMMERCIAL GENERAL LIABILITY**
**CG 01 54 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

### SCHEDULE

| Pollution Liability Aggregate Limit: | $ 3,000,000 |
|---|---|

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following is added to **Section I – Coverages:**

**Coverage D Pollution Bodily Injury And Property Damage**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the Pollution Liability Aggregate Limit in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B** and **D.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make a settlement in accordance with Paragraph **1.a.** above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for injury or damage arising out of a discharge, release or escape of "pollutants", including all injury or damage arising out of all subsequent exposure of persons and property to such "pollutants", shall be deemed to have been made at the time the first of those claims is made against any insured.

Def Appendix 0066

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of the contract or agreement.

**c. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**e. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies to claims against any insured that allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which resulted in the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2012

CG 01 54 04 13

Def Appendix 0067

**f. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**g. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you; or

**(4)** Personal property in the care, custody or control of the insured.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**i. Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard".

**j. Statutory Or Regulatory Clean-up Costs**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**k. Bodily Injury Or Property Damage**

"Bodily injury" or "property damage" which are covered under Coverage **A** – Bodily Injury And Property Damage Liability.

**B. Supplementary Payments — Coverages A And B** is replaced by the following:

**Supplementary Payments – Coverages A, B And D**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

© Insurance Services Office, Inc., 2012
Def Appendix 0068

5. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**C.** The following is added to **Section III — Limits Of Insurance:**

The Pollution Liability Aggregate Limit is the most we will pay under Coverage **D** for all damages because of injury and damage for which claim is first made during the policy period.

**D.** Paragraph **4. Other Insurance** of **Section IV — Conditions** is amended as follows:

All references to Coverage **A** or **B** are amended to read Coverage **A, B** or **D.**

**E.** The following additional definition applies:

"Pollution liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:

　　**a.** Premises you own, rent or occupy; or

　　**b.** Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

© Insurance Services Office, Inc., 2012
Def Appendix 0069

COMMERCIAL GENERAL LIABILITY
CG 01 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties in the Event of Occurrence, Offense, Claim or Suit
Duties in the Event of Occurrence, Claim or Suit
Duties in the Event of Injury, Claim or Suit
Duties in the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties in the Event of a Loss
Duties in the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

**B.** The **Legal Action Against Us** Condition does not apply.

© ISO Properties, Inc., 2003     **Page 1 of 1**     □

Def Appendix 0070

POLICY NUMBER:GLO 3793060-07

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>ALL PREMISES AS REQUIRED IN A WRITTEN CONTRACT OR LEASE AGREEMENT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. |
| **Name Of Person(s) Or Organization(s) (Additional Insured):**<br>ALL PERSONS AND ORGANIZATIONS AS REQUIRED IN A WRITTEN CONTRACT OR LEASE AGREEMENT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. |
| **Additional Premium:**     INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Def Appendix 0071

POLICY NUMBER: GLO 3793060-07

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
|---|
| ONLY THOSE STATE OR POLITICAL SUBDIVISIONS AS REQUIRED BY WRITTEN CONTRACT OR PERMIT |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Def Appendix 0072

POLICY NUMBER: GLO 3793060-07

COMMERCIAL GENERAL LIABILITY
CG 20 15 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| ALL VENDORS AS REQUIRED IN A WRITTEN CONTRACT OR AGREEMENT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. | ALL PRODUCTS COVERED UNDER THIS POLICY. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and

2. If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

© Insurance Services Office, Inc., 2012

Def Appendix 0073

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

    **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

    **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III — Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Def Appendix 0074

COMMERCIAL GENERAL LIABILITY
CG 20 34 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II — Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Def Appendix 0075

POLICY NUMBER: GLO 3793060−07

COMMERCIAL GENERAL LIABILITY
CG 21 16 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
|---|
| **1.** ALL PROFESSIONAL SERVICES |
| **2.** |
| **3.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

© Insurance Services Office, Inc., 2012

Def Appendix 0076

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006
Def Appendix 0077

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

**(1)**  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)**  Any loss, cost or expense arising out of any:

**(a)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Def Appendix 0078

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Def Appendix 0079

POLICY NUMBER:   GLO 3793060-07        **COMMERCIAL GENERAL LIABILITY**
**CG 24 17 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY - RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| ALL RAILROADS AS REQUIRED IN A WRITTEN CONTRACT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. | ALL RAILROAD JOBSITES |

 (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 17 10 01**      © ISO Properties, Inc., 2000      Page 1 of 1    ☐

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

Def Appendix 0081

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Def Appendix 0082

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Def Appendix 0083

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007   IL 00 21 09 08

Def Appendix 0084

IL 02 66 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation;

**c.** Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

**d.** Substantial breaches of contractual duties, conditions or warranties.

If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

**8.** With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph **7.** above:

We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

**9.** Notice of cancellation must be delivered or mailed by first-class mail.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

**2.** We need not mail this notice if:

**a.** You have accepted replacement coverage;

**b.** You have requested or agreed to nonrenewal; or

**c.** This policy is expressly designated as nonrenewable.

**3.** If notice is mailed, proof of mailing is sufficient proof of notice.

IL 02 66 09 08       © ISO Properties, Inc., 2007       **Page 1 of 1**   ☐

Def Appendix 0085



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|---|
| | | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

This endorsement applies to all Coverage Parts included in this policy.

A. **Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA"). The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. to be an act of terrorism;

2. to be a violent act or an act that is dangerous to human life, property or infrastructure;

3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

B. **Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Def Appendix 0086



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS
AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

**SCHEDULE\***

**(1)**  Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Extension Act of 2005, ("TRIA") for lines subject to TRIA and the Terrorism Risk Insurance Program Reauthorization Act of 2007 (TRIPRA):

`$34,306.00`

If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in **(2)** of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA.

**(2)**  Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement:

   No change unless one of the following is completed -

   Return Premium:  N/A

   Additional Premium:  N/A

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

\*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**

In accordance with the TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.  The federal program established by the Act is scheduled to terminate at the end of December 31, 2014 unless extended by the federal government.

**C.  Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism.  If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in **(2)** of the Schedule will apply. If the level or terms of federal participation change, the premium shown in **(1)** of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.

**Policy Number**
**GLO 3793060-07**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | DYNO NOBEL, INC. | Effective Date: 10-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No. 29067-000 |

## NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OR NON-RENEWAL, A WRITTEN NOTICE WILL BE GIVEN TO THE INSURED NINETY (90) DAYS PRIOR TO THE EFFECTIVE DATE OF SUCH CANCELLATION OR NON-RENEWAL, EXCEPT IN THE EVENT OF NON-PAYMENT OF PREMIUM WHERE TEN (10) DAYS NOTICE WILL BE GIVEN.

Def Appendix 0088

**Policy Number**
**GLO 3793060-07**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured   DYNO NOBEL, INC.

Effective Date:   10-01-14

12:01 A.M., Standard Time

Agent Name   MARSH USA, INC.

Agent No.   29067-000

### BROAD NAMED INSURED

ANY SUBSIDIARY COMPANY AS NOW FORMED OR CONSTITUTED AND ANY OTHER
COMPANY OVER WHICH THE NAMED INSURED HAS ACTIVE CONTROL, SO LONG AS
THE NAMED INSURED OR ANY SUBSIDIARY COMPANY HAS AN OWNERSHIP INTEREST
OF MORE THAN 50% OF SUCH COMPANY

**U-GL-1114-A CW (10/02)**

Def Appendix 0089



**COMMERCIAL INSURANCE**

**COMMON POLICY DECLARATIONS**

| Policy Number   GLO 3793060-08 | Renewal of Number   GLO 3793060-07 |
|---|---|

| Named Insured and Mailing Address | Producer and Mailing Address |
|---|---|
| DYNO NOBEL, INC.<br>(SEE NAMED INSURED ENDT)<br>2795 E COTTONWOOD PKWY<br>SALT LAKE CITY UT 84121-7032 | MARSH USA INC<br>15 W SOUTH TEMPLE STE 700<br>SALT LAKE CITY UT 84101-1533 |

Producer Code   29067-000

Policy Period:  Coverage begins   10-01-2015   at 12:01 A.M.;  Coverage ends 10-01-2016   at 12:01 A.M.

The name insured is  ☐ Individual   ☐ Partnership   ☒ Corporation
☐   Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group.  The company that provides coverage is designated on each Coverage Part Common Declarations.  The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our.  The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                           PREMIUM  $   287,329.00
 issued by STEADFAST INSURANCE COMPANY

| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.**<br>This premium does not include Taxes and Surcharges. | **TOTAL** | **$** | 287,329.00 |
|---|---|---|---|

| **Taxes and Surcharges** | **TOTAL** | **$** | |
|---|---|---|---|

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this          day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Def Appendix 0090

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 3793060-08

# STEADFAST INSURANCE COMPANY

Named Insured
DYNO NOBEL, INC.

Policy Period: Coverage begins 10-01-2015 at 12:01 A.M.; Coverage ends 10-01-2016 at 12:01 A.M.

Producer Name: MARSH USA INC          Producer No. 29067-000

**Item 1.** Business Description: EXPLOSIVES

**Item 2.** Limits of Insurance

**The Limits of Insurance stated below are the most available to pay damages, medical expenses and 'allocated loss adjustment expenses" covered by this policy. Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.**

LIMITS

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | 3,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | 3,000,000 | |
| EACH OCCURRENCE LIMIT | 3,000,000 | |
| DAMAGE TO PREMISES | | |
| RENTED TO YOU LIMIT | 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | 3,000,000 | |
| | | Any one person or organization |

**Item 3.** Form of Business and Location Premises

CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 4.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 5.** Premiums

Coverage Part Premium: $          287,329

Other Premium:

Total Premium: $          287,329

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number: GLO 3793060-08

Named Insured: DYNO NOBEL, INC.

## Policy Period: Coverage begins 10-01-2015 at 12:01 A.M; Coverage ends 10-01-2016 at 12:01 A.M

Producer Name: MARSH USA INC                    Producer No. 29067-000

**Item 1.** Limits of Insurance

$ 3,000,000 Aggregate Limit

$ 3,000,000 Each Claim Limit

**Item 2.** Form of Business:

[ ] Individual      [ ] Parnership      [ ] Joint Venture   [X] Corporation

[ ] Other

_____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|----------|-----------------------------------------------|------|--|-----------------|
| 92100 | IF ANY | $ INCL | Per Employee | $ INCL |
| | | $ INCL | Flat Charge | $ INCL |

Total Advance Premium For This Coverage Part:      $      INCL

Audit Period:   [ ] Annual   [ ] Semi-annual   [ ] Quarterly   [ ] Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

9/30/2008   (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

Def Appendix 0092

**Policy Number**
**GLO 3793060-08**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Steadfast Insurance Company**

Named Insured   DYNO NOBEL, INC.                    Effective Date: 10-01-15

                                                    12:01 A.M., Standard Time

Agent Name   MARSH USA INC                          Agent No.   29067-000

COMMON & GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GL-D-1286-A CW | 09-06 | COMMERCIAL GEN LIAB COVERAGE PART DEC |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC – CLAIMS MADE |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-621-A CW | 10-02 | SCHEDULE OF NAMED INSURED(S) |
| U-GL-1287-B CW | 04-13 | COMMERCIAL GEN LIAB COVERAGE FORM |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| STF-GU-199-B | 01-09 | IMPORTANT NOTICE SEV. OF SUIT/IN WITNESS |
| U-GL-1063-A-CW | 12-01 | FUNGUS EXCLUSION ENDORSEMENT |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1205-B CW | 01-08 | WELDING HEALTH HAZARD EXCLUSION |
| U-GL-1342-A CW | 10-07 | LEAD LIABILITY EXCLUSION |
| U-GL-1449-A CW | 04-10 | SELF INSURED RETENTION |
| U-GL-1475-A CW | 02-11 | WHO IS AN INSURED AMENDMENT BROAD FORM |
| U-GL-1521-A CW | 10-12 | BLANKET NOTIFICATION TO OTH CANC/NONREN |
| U-GL-441-B CW | 12-01 | AIRCRAFT PROD., GROUNDING & TESTING EXCL |
| U-GL-911-B CW | 09-05 | CLAIM SERIES ENDORSEMENT |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-923-B CW | 06-04 | SILICA OR SILICA MIXED DUST EXCLUSION |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GU-739-A CW | 09-06 | DEFENSE WITHIN LIMITS NOTICE |
| CG 01 23 | 03-97 | INDIANA CHANGES POLLUTION EXCLUSION |
| CG 01 34 | 08-03 | MISSOURI CHANGES –POLLUTION EXCLUSION |
| CG 01 54 | 04-13 | VERMONT CHANGES-POLLUTION |
| CG 01 86 | 12-04 | UT CHANGES |
| CG 20 11 | 04-13 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 15 | 04-13 | ADDL INSD-VENDORS |
| CG 20 34 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUI |
| CG 21 06 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |
| CG 21 16 | 04-13 | EXCL-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCL ENDT |
| CG 21 55 | 09-99 | TOTAL POLLUTION EXCL. WITH HOSTILE FIRE |
| CG 21 73 | 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG 24 17 | 10-01 | CONTRACTUAL LIABILITY – RAILROADS |
| CG 26 88 | 01-15 | AK EXCL OF CERTIFIED ACTS OF TERRORISM |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 66 | 09-08 | UTAH CHANGES-CANC & NONRENL |
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| U-GU-1191-A CW | 03-15 | SANCTIONS EXCLUSION ENDORSEMENT |
| U-GU-630-D CW | 01-15 | DISCLOSURE OF INFO RELATING TO TRIA |

**U-GU-619-A CW (10/02)**

Def Appendix 0093

**Policy Number**
**GLO 3793060-08**

**SCHEDULE OF NAMED INSURED(S)**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | DYNO NOBEL, INC. | Effective Date:    10-01-15 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA INC | Agent No.    29067-000 |

NAMED INSURED

```
DYNO NOBEL, INC.
DYNO NOBEL ASA
DYNO NOBEL HOLDINGS ASA
DYNO NOBEL HOLDINGS USA, INC.
DYNO NOBEL LEASING, INC.
DYNO NOBEL TRANSPORTATION INC.
IRECO HOLDINGS CO
DYNO NOBEL HOLDINGS USA II, INC.
ETI HOLDING CORPORATION
AMERICAN WEST EXPLOSIVES, INC.
AMERICAN EAST EXPLOSIVES, INC.
DBA GOLDEN STATE EXPLOSIVES
DBA RIMROCK EXPLOSIVES
DBA BLASTRITE SERVICES
DBA EXPLOSIVES ENERGIES
DBA EXPLO TECH
ETI EXPORT, INC
DYNO EAST KENTUCKY INC
DBA MOUNTAIN VALLEY EXPLOSIVES
ST LAWRENCE EXPLOSIVES CORP
HALL EXPLOSIVES, INC
DNX DRILLING INC
EVENSON EXPLOSIVES LLC
DYNO NOBEL HOLDING AS
DYNO NOBEL HOLDINGS USA II
MT. STATE BIT SERVICES, INC
CMMPM  LP
CMMPM  LLC
SJL DRILL SERVICES, INC
MINNESOTA EXPLOSIVES CO
SIMSBURY HOPMEADOW STREET LLC
TECH REAL ESTATE HOLDING LLC
DYNO NOBEL LOUISIANA AMMONIA LLC (DNLA)
```

**U-GU-621-A CW (10/02)**

Def Appendix 0094

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**The Limits of Insurance shown in the Declarations is the most available to pay any combination of damages, medical expenses and "allocated loss adjustment expenses" covered by this policy.  Various other provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.**

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)** The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of:

            **(a)** Judgments or settlements under Coverages **A** or **B**;

            **(b)** Medical expenses under Coverage **C**; or

            **(c)** "Allocated loss adjustment expenses".

    No other obligation or liability to pay sums or perform acts or services is covered.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Def Appendix 0095

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.        U-GL-1287-B CW (04/13)

Def Appendix 0096

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Def Appendix 0097

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

Def Appendix 0098

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days.   A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.   Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.   Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

Def Appendix 0099

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of:

**(a)** Judgments or settlements under coverages **A** or **B**;

**(b)** Medical expenses under Coverage **C**; or

**(c)** "Allocated loss adjustment expenses".

No other obligation or liability to pay sums or perform acts or services is covered.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        U-GL-1287-B CW (04/13)

Def Appendix 0100

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

Def Appendix 0101

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.       U-GL-1287-B CW (04/13)

Def Appendix 0102

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" but will reduce the limits of insurance as "allocated loss adjustment expenses".

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "allocated loss adjustment expenses" or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

Def Appendix 0103

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by;

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      U-GL-1287-B CW (04/13)

Def Appendix 0104

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage **C**;

    **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

    **c.** Damages under Coverage **B**; and

    **d.** "Allocated loss adjustment expenses" arising from **a.**, **b.**, or **c.** above.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and "allocated loss adjustment expenses" arising from claims or "suits" for damages under coverage **A** because of "bodily injury" or "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragaph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization and "allocated loss adjustment expenses" arising from claims or "suits" for damages under Coverage **B**.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A**;

    **b.** "Allocated loss adjustment expenses" arising from damages under Coverage **A**; and

    **c.** Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner and related "allocated loss adjustment expenses".

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Def Appendix 0105

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

      This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

    **b. Excess Insurance**

      **(1)** This insurance is excess over:

        **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

          **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

          **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

          **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

          **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

        **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

      **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

        **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        **(b)** The total of all deductible and self-insured amounts under all that other insurance.

      **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    U-GL-1287-B CW (04/13)

Def Appendix 0106

    **c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium Audit**

    **a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.**  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    **c.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.  Representations**

By accepting this policy, you agree:

    **a.**  The statements in the Declarations are accurate and complete;

    **b.**  Those statements are based upon representations you made to us; and

    **c.**  We have issued this policy in reliance upon your representations.

**7.  Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.**  As if each Named Insured were the only Named Insured; and

    **b.**  Separately to each insured against whom claim is made or "suit" is brought.

**8.  Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.  When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.  Duties – Claim Settlement and Allocated Loss Adjustment Expenses**

As soon as our right and duty to defend the insured against any "suit" seeking damages end, you will promptly assume control of the settlement of claims and defense of "suits". A list of outstanding claims and "suits" will be made available to the First Named Insured upon request.

**SECTION V – DEFINITIONS**

**1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.**  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.**  "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and includes but is not limited to all Supplementary Payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses

Def Appendix 0107

reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

3. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   U-GL-1287-B CW (04/13)

Def Appendix 0108

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**11.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

Def Appendix 0109

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**17.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**20.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**21.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Def Appendix 0110

**22.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

Def Appendix 0111

# Employee Benefits Liability –
# Claims-Made Coverage Form

**This Coverage Form provides *claims-made* coverage.  Please read the entire form carefully.**
Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.
**Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.**

## Section I. Coverage - Employee Benefit Liability

**1.  Insuring Agreement**

**A.**  We will pay those sums that the "insured" becomes legally obligated to pay as damages  because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply.  We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

  **(1)**  The amount we pay for damages is limited as described in Section II. - Limits  of  Insurance of this Coverage Part; and

  **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.**  **(1)**  This insurance applies to an act, error or omission only if:

  **a.**  A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

  **b.**  The act, error, or omission takes place in the "coverage territory";

  **c.**  The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

  **d.**  The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

  **(2)**  A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first.   "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2.  Exclusions**

This insurance does not apply to:

**A.**  "Bodily injury", "property damage", or "personal and advertising injury";

**B.**  Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.**  Any "claim" or "suit" arising out of discrimination or humiliation;

**D.**  Any "claim" or "suit"  arising out of an insurer's or other provider's  failure  to  perform its contract;

**E.**  Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

**F.**  Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.**  Any "claim" or "suit" arising out of:

  **(1)**  Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

  **(2)**  The appointment of, or failure to appoint, any  investment  manager,  administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**(3)** Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

**(4)** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

    **a.** The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

    **b.** The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3.  Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**II.  Limits of Insurance**

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** "Claims" made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**III.  Conditions**

**A.  Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B.  Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

    **a.** How, when, and where the act, error, or omission took place;

    **b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

**(2)** If a "claim" is received by any "insured", you must:

    **a.** Immediately record the specifics of the "claim" and the date received; and

    **b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

**(3)** You and any other involved "insured" must:

    **a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

    **b.** Authorize us to obtain records and other information;

Def Appendix 0113

**c.** Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

**(1) Primary Insurance**

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

**(2) Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

**a.** No Retroactive Date is shown in the Declarations of this insurance; or

**b.** The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**i.** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**ii.** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**(3) Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom "claim" is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

    **(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

    **(2)** Handling records in connection with "employee benefit programs"; or

    **(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Claim" means:

The receipt by you of a demand for money or services which alleges an act, error, or omission in the "administration" of your "employee benefit programs."

**E.** "Coverage territory" means:

    **(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

    **(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

**F.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**G.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**H.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**I.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **(1)** False arrest, detention, or imprisonment;

    **(2)** Malicious prosecution;

    **(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

    **(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    **(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

    **(6)** The use of another's advertising idea in your "advertisement"; or

    **(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J.** "Property damage" means:

    **(1)** Physical injury to tangible property, including all resulting loss of use of that property.

    **(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

    **(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

Def Appendix 0115



# Important Notice
Service of Suit and In Witness Clause

### Service of Suit

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

### In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                  Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

Def Appendix 0116

# Fungus Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**Products/Completed Operations Liability Coverage Part**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused directly or indirectly, in whole or in part, by:

1.   Any "fungus(i)" or "spore(s)", or

2.   Any substance, vapor or gas produced by or arising out of any "fungus(i)" or "spore(s)", or

3.   Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(i)" or "spore(s)"

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

For purposes of this endorsement the following definitions are added:

"Fungus(i)" includes, but is not limited to, any form or type of mold, mushroom or mildew.

"Spore(s)" means any reproductive body produced by or arising out of any "fungus(i)".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Def Appendix 0117

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions**  of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions**  of **Coverage B – Personal And Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A. "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1.   "Fungi"or "bacteria"; or

   2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B. Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C. For the purposes of this exclusion, the following definitions are added:

   1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

   3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

U-GL-1171-AC W (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Def Appendix 0118

# Additional Insured – Automatic – Owners, Lessees Or Contractors



| Policy  No. | Eff.  Date  of Pol. | Exp.  Date  of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured**: DYNO NOBEL, INC.

**Address (including ZIP Code)**:

2795 E COTTONWOOD PKWY

SALT LAKE CITY, UT 84121-7032

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such  person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

 "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

U-GL-1175-F CW (04/13)
Page 1 of 2

Def Appendix 0119

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV — Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III — Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Def Appendix 0120

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

2. **Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

1. Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2. Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0121

# Welding Health Hazard Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Owners and Contractors Protective Liability Coverage Form––Coverage For Operations of Designated Contractor**
**Products-Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Form**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.   Exclusions**

This insurance does not apply to:

**Welding Health Hazard**

"Bodily injury" caused directly or indirectly by  the actual, alleged or threatened inhalation, ingestion, absorption, or  exposure to harmful fumes or gases caused by "welding materials and equipment" used in connection with the process of welding or fusing together of any metals or other materials.

For the purposes of this exclusion, the following definition applies:

"Welding materials and equipment" means:

(1)  Welding machinery or other welding process equipment;

(2)  Welding rods;

(3)  Electrodes; or

(4)  Any consumable products including, but not limited to, wires, fluxes, coatings or cleaning agents.

# Lead Liability Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions,** of **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

    **(a)** Exposure to or existence of lead, paint containing lead, or any other material, product  or substance containing lead; or

    **(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

    whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

    **(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

Def Appendix 0123

# Self Insured Retention



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Liquor Liability Coverage Part**
**Stop Gap Employers Liability Coverage Part**

**Under the provisions of this endorsement, you are responsible for payment of all or part of "defense costs" in addition to Self Insured Retention (SIR) Amounts.**

**SCHEDULE – SELF INSURED RETENTION AMOUNTS**

| You may select only one choice of **Option 1**, **2**, **3** or **4** below.  In addition, **Option 5** may or may not be selected. | | |
|---|---|---|
| [X] **Option 1** | $   415,108 | **Per Incident – You Pay Defense Costs Within SIR** |
| [ ] **Option 2** | | **Per Incident – You Pay All Defense Costs** |
| [ ] **Option 3** | | **Per Incident – All Incidents Other Than Products-Completed Operations -- You Pay Defense Costs Within SIR** |
| | | **Per Incident – Products-Completed Operations Incidents Only – You Pay Defense Costs Within SIR** |
| | If only one amount is shown, that same amount also applies as respects the **Option 3** Self Insured Retention Amount not shown. | |
| [ ] **Option 4** | | **Per Incident – All Incidents Other Than Products-Completed Operations -- You Pay All Defense Costs** |
| | | **Per Incident – Products-Completed Operations Incidents Only-- You Pay All Defense Costs** |
| | If only one amount is shown, that same amount also applies as respects the **Option 4** Self Insured Retention Amount not shown. | |
| **If no Self Insured Retention Amount(s) is shown above for** Option 1, 2, 3 or 4, Option 1 – Per Incident – You Pay Defense Costs Within SIR **for an amount of $1,000,000 is deemed to be selected.** | | |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0124

| | | |
|---|---|---|
| ☐ **Option 5** | | Aggregate – Adjustable<br>**Based on a rate of** _____ **per** _____ **(units)** of<br>**(exposure)**<br><br>***Example:  based on a rate of <u>$3.00</u> per <u>$100</u> of <u>WC Payroll</u>***<br><br>**Minimum Aggregate**<br><br>OR |
| ☐ **Option 5** | | **Per Incident – You Pay All Defense Costs** |
| QUARTERLY | | **Periodic Reporting Requirement**<br>(If no information is provided at left, the reporting requirement is quarterly.) |
| 25 **%** | | **Level of Notification of Potential Penetration as a % of the Self Insured Retention** (If no percentage information is provided at left, 25% applies.) |
| ESIS | | **Authorized Claim Service Provider** |

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

I.   **Your Obligations – Self Insured Retention**

  A.   The Self Insured Retention (SIR) Amount(s) shown above in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement apply as follows:

  1.   **Option 1 Per Incident – You Pay Defense Costs Within SIR**

  If **Option 1** is selected, it is a condition precedent to our liability that you make actual payment of "self insured retention" and "defense costs" for each "incident", until you have paid "self insured retention" and "defense costs" equal to the **Per Incident – You Pay Defense Costs Within SIR** amount, subject to the provisions of Paragraph **A.5.** below.

  The **Per Incident – You Pay Defense Costs Within SIR** amount is the most you will pay for "self insured retention" and "defense costs" arising out of each "incident", regardless of:

  **a.**   The number of persons or organizations making claims or bringing "suits" because of the "incident"; or

  **b.**   The number of coverages applicable to the "incident" under this policy,

  except for any "defense costs" we may elect to pay.

  If any final judgment or settlement and "defense costs" are less than such Self Insured Retention Amount(s), we shall have no obligation to pay "self insured retention" or "defense costs" under this policy.

  2.   **Option 2 Per Incident – You Pay All Defense Costs**

  If **Option 2** is selected, it is a condition precedent to our liability that you make actual payment of "self insured retention" for each "incident", until you have paid "self insured retention" equal to the **Per Incident – You Pay All Defense Costs** amount, subject to the provisions of Paragraph **A.5.** below.

  The **Per Incident – You Pay All Defense Costs** amount is the most you will pay for "self insured retention" arising out of each "incident", regardless of:

  **a.**   The number of persons or organizations making claims or bringing "suits" because of the "incident"; or

  **b.**   The number of coverages applicable to the "incident".

  Under this **Option 2**, you are also obligated to pay all "defense costs", both within and excess of the Self Insured Retention Amount, except for any "defense costs" we may elect to pay.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Def Appendix 0125

3. **Option 3 Per Incident ─ You Pay Defense Costs Within SIR**

If **Option 3** is selected, it is a condition precedent to our liability that you make actual payment of "self insured retention" and "defense costs" for each "incident", until you have paid "self insured retention" and "defense costs" equal to the:

   a. **Per Incident ─ All Incidents Other Than Products-Completed Operations ─ You Pay Defense Costs Within SIR** amount; or

   b. **Per Incident ─ Products-Completed Operations Incidents Only ─ You Pay Defense Costs Within SIR** amount,

subject to the provisions of Paragraph **A.5.** below.

The **Per Incident ─ All Incidents Other Than Products-Completed Operations -- You Pay Defense Costs Within SIR** amount is the most you will pay for "self insured retention" and "defense costs" arising out of each "incident", regardless of the number of persons or organizations making claims or bringing "suits" because of the "incident" or the number of coverages, other than "products-completed operations hazard" coverage, applicable to the "incident", except for any "defense costs" we may elect to pay.

The **Per Incident ─ Products-Completed Operations Incidents Only -- You Pay Defense Costs Within SIR** amount is the most you will pay for "self insured retention" and "defense costs" arising out of each "products-completed operations hazard" "incident", regardless of the number of persons or organizations making claims or bringing "suits" because of the "incident", except for any "defense costs" we may elect to pay.

If any final judgment or settlement and "defense costs" are less than such Self Insured Retention Amount(s), we shall have no obligation to pay "self insured retention" or "defense costs" under this policy.

4. **Option 4 Per Incident ─ You Pay All Defense Costs**

If **Option 4** is selected, it is a condition precedent to our liability that you make actual payment of "self insured retention" for each "incident", until you have paid "self insured retention" equal to the:

   a. **Per Incident ─ All Incidents Other Than Products-Completed Operations ─ You Pay All Defense Costs** amount ; or

   b. **Per Incident ─ Products-Completed Operations Incidents Only─ You Pay All Defense Costs** amount,

subject to the provisions of Paragraph **A.5.** below.

The **Per Incident ─ All Incidents Other Than Products-Completed Operations -- You Pay All Defense Costs** amount is the most you will pay for "self insured retention" arising out of each "incident", regardless of the number of persons or organizations making claims or bringing "suits" because of the "incident" or the number of coverages, other than "products-completed operations hazard" coverage, applicable to the "incident".

The **Per Incident -- Products-Completed Operations Incidents Only-- You Pay All Defense Costs** amount is the most you will pay for "self insured retention" arising out of each "products-completed operations hazard" "incident", regardless of the number of persons or organizations making claims or bringing "suits" because of the "incident".

Under this **Option 4**, you are also obligated to pay all "defense costs", both within and excess of the Self Insured Retention Amount, except for any "defense costs" we may elect to pay.

5. **Aggregate Amount**

   a. If **Option 5** is selected as respects Paragraphs **A.1.** or **A.3.** above, it is a condition precedent to our liability that you make actual payment of "self insured retention" and "defense costs" equal to the aggregate amount.  When you have paid "self insured retention" and "defense costs" equal to the aggregate amount, we will pay any further "self insured retention" and "defense costs" incurred during the remainder of the policy period. Such aggregate amount is the most you will pay for all "self insured retention" and "defense costs" incurred under this policy, subject to Paragraphs **c.(1)** or **(2)** below, whichever is applicable.

U-GL-1449-A CW (04/ 10)
Page 3 of 8

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0126

**b.** If **Option 5** is selected as respects Paragraphs **A.2.** or **A.4.** above, it is a condition precedent to our liability that you make actual payment of "self insured retention" equal to the aggregate amount. When you have paid "self insured retention" equal to the aggregate amount, we will pay any further "self insured retention" incurred during the remainder of the policy period. This aggregate amount, however, applies only to your total incurred "self insured retention" during the policy period and does not apply to your continued obligation for payment of "defense costs". Such aggregate amount is the most you will pay for all "self insured retention" incurred under this policy, subject to Paragraphs **c.(1)** or **(2)** below, whichever is applicable.

**c.** **(1)** If an **Aggregate — Adjustable** amount is shown, the final aggregate amount will be determined at the end of the policy period by an audit of your records. Such audit will be based on the rate shown under the **Aggregate — Adjustable** amount multiplied by the final audited exposure. The amount shown as the **Aggregate — Adjustable** amount is an estimated amount that will be finalized based on what the audit of your records will develop.

   In no event will the final audited aggregate amount be less than the **Aggregate — Adjustable** amount, shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS**, unless a **Minimum Aggregate** amount is shown. If a **Minimum Aggregate** amount is shown, the final audited **Aggregate — Adjustable** amount will not be less than the **Minimum Aggregate** amount.

   **(2)** If an **Aggregate — Flat** amount is shown, such amount is the final applicable aggregate amount, which will not be adjusted.

   If no entry appears in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement as an aggregate amount, then your obligation for payment of "self insured retention" and "defense costs" applies only in accordance with the selected Paragraph **A.1.**, **A.2.**, **A.3.** or **A.4.** above.

**B. Payments By Others**

Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy your "self insured retention" obligations or your obligations for payment of "defense costs".

**C. Deductible Provisions**

Deductible provisions apply in addition to, but do not serve to satisfy the "self insured retention" requirements of this endorsement. You must satisfy the "self insured retention" requirements of this endorsement prior to the application of any separate deductible provisions provided under this policy.

**D. Other Self Insured Retention Provisions**

**1.** The Self Insured Retention Amount(s) shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the applicable Self Insured Retention Amount(s).

**2.** Your obligation to pay the Self Insured Retention Amount(s) is not fulfilled by:

   **a.** The payment of "self insured retention" under any other policy; or

   **b.** Any payment made by us or another insurance company,

   even if the payments described under Paragraph **2.a.** or **2.b.** apply to the same "incident" associated with the "self insured retention" amount due under this policy.

**3.** If more than one policy issued by us provides sums payable because of covered damages sustained from a single continuous covered "incident", it is a condition precedent to our liability for payment of these covered damages that you first shall pay all applicable "self insured retention" of each policy for which coverage applies to the continuous "incident".

**E. Your Insolvency or Bankruptcy**

To the fullest extent allowable by law, your satisfaction of the "self insured retention" and any applicable "defense costs", as a condition precedent to our liability, applies regardless of your insolvency or bankruptcy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0127

**F.   Settlement of Claim**

You may not settle any claim or "suit" which exceeds the Self Insured Retention Amount(s) shown in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement without our written permission to do so. If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

**G.   Authorized Claim Service Provider**

1.   You shall employ a claim service provider acceptable to us, as shown in the **Authorized Claim Service Provider** of the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement for the purpose of providing claim services for settlement of losses.  You shall pay all fees, charges and costs of the claim service provider in addition to "self insured retention" and applicable "defense costs", without any reimbursement from us.

2.   In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall notify us within (10) days of such change and shall replace the claim service provider with another claim service provider that is acceptable to us.

3.   You shall allow us to audit the claim service provider and provide supervisory claim service, at our expense.

**H.   Notification of Potential Penetration**

1.   You shall see to it that we are notified promptly of an "incident" which may result in a claim under this policy. Notice must include:

   **a.**   How, when and where the "incident" took place;

   **b.**   The names and addresses of any injured persons and witnesses; and

   **c.**   The nature and location of any injury or damage arising out of the "incident".

2.   You shall notify us promptly, per Paragraph **H.1.** above, in the event of any "incident", without regard to liability, which results in any of the following injuries or damages:

   **a.**   **(1)**  Death;

   **(2)**  Brain damage;

   **(3)**  Paraplegic or quadriplegic impairment;

   **(4)**  Amputation or serious functional impairment of any major limb;

   **(5)**  Severe burns involving more than 25% of the body or causing serious disfigurement;

   **(6)**  Sensory impairment (sight, hearing, taste or smell);

   **(7)**  Severe internal body organ damage or loss;

   **(8)**  Multiple fractures involving more than one body part;

   **(9)**  Permanent and total disability;

   **(10)** Sexual abuse or molestation;

   **(11)** Significant psychological / neurological involvement;

   **(12)** Occupational disease; or

   **b.**   Any construction defect damages arising from attached housing such as condominiums, townhomes or from multiple structures.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0128

3. You must notify us promptly of any:

   a. (1) Potential exposure;

   (2) Loss reserve established; or

   (3) Potential judgment, without regard to liability,

   which equals or exceeds the **Level of Notification of Potential Penetration as a % of the Self Insured Retention** percentage amount shown in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement; or

   b. "Suit", in the event a "suit" is filed, even if the amount claimed in the "suit" is unspecified or less than the Self Insured Retention Amount(s).

**I. Reporting - Self Insured Retention**

1. You must report claims or "suits" per the following:

   You must monitor the cumulative "self insured retention" and "defense costs" sustained and report those total amounts to us in accordance with the frequency of report indicated in the **Periodic Reporting Requirement** of the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement.  However, if the total of all "self insured retention" and "defense costs" under **Options 1** or **3** or the total of all "self insured retention" under **Options 2** or **4** should at any time during the policy period attain an amount equal to 75% of the **Aggregate – Adjustable** amount or **Aggregate – Flat** amount, if applicable, you are required in that event to make an immediate report to us as to total "self insured retention" and "defense costs" sustained at that time.

   The periodic report that you send to us must be in a format that is acceptable to us, and include an accounting of all individual losses and "defense costs" incurred as of the date of the report.

2. Within forty-five (45) days after the end of the policy term, you must give us a listing of all existing claims or "suits" within the Self Insured Retention Amounts.  At a minimum, such listing will include the following for each claim or "suit":

   a. A description of each claim or "suit";

   b. The date of the "incident";

   c. The amounts paid and reserved for future payments for loss and "defense costs"; and

   d. The current status of the claim or "suit".

3. Quarterly thereafter, you are required to give us an updated listing of the status of all new and existing claims or "suits", both paid and reserved, until all claims and "suits" for the policy period are closed or settled.

4. Compliance with the reporting requirements set forth in this endorsement is a condition precedent to coverage.

**J. Representations**

By acceptance of this policy you agree that you will not procure insurance for all or any part of the Self Insured Retention Amounts shown in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement.  If such insurance is procured, there will be no coverage under this policy as respects those Self Insured Retention Amounts.

**II. Our Rights and Obligations Excess of the Self Insured Retention**

**A. Self Insured Retention – Your Failure to Respond**

In the event of your refusal to respond to your obligations for the payment of "self insured retention" or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these "self insured retention" or "defense costs".

**B. Damages / Defense Costs Excess of the Self Insured Retention – Per Incident**

We shall be liable only for the amount of covered damages and if applicable, "defense costs" in excess of the Self Insured Retention Amount(s) shown in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement, subject to the Limits of Insurance and other applicable provisions of our policy.  We shall have no obligations under this policy unless you have satisfied your "self insured retention" obligations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0129

**C.   Damages / Defense Costs Excess of the Self Insured Retention - Aggregate**

If an **Aggregate — Adjustable** amount or **Aggregate — Flat** amount is shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement, we shall be liable for the amount of covered damages and if applicable, "defense costs" excess of such aggregate amount, subject to the Limits of Insurance and other applicable provisions of our policy.  We shall have no obligations under this policy unless you have satisfied your "self insured retention" obligations.

**D.   Settlement of Claims**

    **1.**   When your liability is reasonably anticipated to exceed the remaining Self Insured Retention Amount(s), we shall have, at our option, the right to ask you to tender the remaining Self Insured Retention Amount(s) and have the right to negotiate the settlement of any claim.  We shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the Self Insured Retention Amount(s).

        If, however, you refuse to consent to any settlement recommended by us within the "self insured retention" and elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" from the amount for which the claim could have been settled on the date you refused to consent.  We shall have no liability with respect to such claim if this difference is zero or a negative number.

        For Paragraphs **A.1.** and **A.3.** under **I. Your Obligations — Self Insured Retention**, we shall have no responsibility for "defense costs" incurred after the date you refused to consent.

    **2.**   With respect to any claim under this insurance which has been tendered to us and which may exceed the Self Insured Retention Amount(s), we may pay any or all of the Self Insured Retention Amount(s) on your behalf to defend or to effect settlement of such claim.  Such amount paid by us shall be reimbursed promptly by you.

    **3.**   At our expense, we shall have the right, but not the duty to associate counsel and you have the duty to cooperate with any counsel we associate on a case, regardless of whether the covered damages or "defense costs" for which coverage is provided under this policy appear likely to exceed the Self Insured Retention Amount(s) shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement.

**E.   Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any "self insured retention" and "defense costs" from anyone liable for the injury or covered damages.  You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or covered damages, the recovered amount will first be applied to any payments made by us in excess of the Self Insured Retention Amount(s) shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement.  The remainder of the recovery, if any, will then be applied to reduce the "self insured retention" and "defense costs" reimbursed or reimbursable by you as respects that injury or covered damages.

**III.   Midterm Cancellation**

In the event of a midterm cancellation of this policy, **Option 5 — Aggregate — Adjustable** amount or **Aggregate — Flat** amount shown in the **SCHEDULE — SELF INSURED RETENTION AMOUNTS** of this endorsement is not subject to any pro rata reduction.  Such aggregate amount will apply as if the policy term had not been shortened.

**IV.   Definitions**

**A.   "Defense Costs" means:**

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment, declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy. However, the fees, charges and costs of a claim service provider are not considered "defense costs".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0130

**B.**   "Incident", for purposes of this endorsement only, means:

As defined or used in our policy, an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other such event that is or is alleged to be the cause or result of a loss involving the liability coverages of our policy and to which a "self insured retention" applies.

**C.**   "Self insured retention" means:

The amount or amounts which you must pay for all covered damages which you shall become legally obligated to pay because of the coverages included in the policy to which this endorsement is attached, sustained by one or more persons or organizations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0131

# Who Is An Insured Amendment – Broad Form



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.    Broadened Named Insured**

The following is added to **Section II – Who Is An Insured**:

**1.** Any organization of yours that has been acquired or formed prior to this policy period (other than a partnership, limited liability company or joint venture) but is not shown in the Declarations as of the effective date of this Coverage Part, will nevertheless qualify as a Named Insured if:

**a.** You maintain an ownership interest of more than 50% of such organization; and

**b.** Such organization has been incorporated or organized under the laws of the United States of America (including any state thereof), its territories or possessions or Canada (including any province thereof).

Each such organization remains qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the current policy period.

**2.** However, regardless of the provisions of Paragraph **1.** above, no such organization will qualify as a Named Insured under this Coverage Part if the organization:

**a.** Was newly acquired or formed by you in the preceding policy period in which we provided coverage, but was not reported to us before the end of that preceding policy period;

**b.** Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Part; or

**c.** Would be an insured under another policy, regardless of coverage termination or the exhaustion of its limits of insurance.

**B.    Newly Acquired or Formed Organizations as Named Insureds**

Paragraph **3.** of **Section II – Who Is An Insured** is replaced by the following:

**1.    Newly Acquired Or Formed Organizations Other Than Partnerships, Joint Ventures or Limited Liability Companies**

Any organization you newly acquire or form during this policy period (other than a partnership, limited liability company or joint venture) will qualify as a Named Insured if:

**a.** You have an ownership interest of more than 50% in such organization; and

**b.** Such organization has been incorporated or organized under the laws of the United States of America (including any state thereof), its territories or possessions or Canada (including any province thereof).

Each newly acquired or formed organization shall remain qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the current policy period.

**2.** However, regardless of the provisions of Paragraph **1.** above:

**a.** No such organization will qualify as a Named Insured under this Coverage Part if the organization:

**(1)** Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Part; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0132

       **(2)** Would be an insured under another policy, regardless of coverage termination or the exhaustion of its limits of insurance; and

    **b.** As respects any such organization qualifying as a Named Insured, coverage is afforded only until the end of this policy period if the organization is not reported to us during this policy period.

**3. Newly Formed Partnerships, Limited Liability Companies, or Joint Ventures**

    Any partnership, limited liability company or joint venture you newly form during this policy period, where:

    **a.** You maintain an ownership interest;

    **b.** As respects any joint venture, you have agreed in the Joint Venture Agreement to name the joint venture as a Named insured to your policy;  and

    **c .** Such partnership, limited liability company or joint venture has been organized under the laws of the United States of America (including any state thereof), its territories or possessions or Canada (including any province thereof),

    will qualify as a Named Insured, provided no other similar insurance was purchased for the partnership, limited liability company or joint venture.  However, coverage under this provision is afforded only until the 90th day after you form the partnership, limited liability company or joint venture, or the end of the policy period, whichever is earlier, if the organization is not reported to us during this policy period.

**4.** With regard to Paragraphs **1.** and **3.** above, the following additional provisions apply:

    **a.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization, partnership, limited liability company or joint venture; and

    **b.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization, partnership, limited liability company or joint venture.

**C**. The last paragraph of **Section II. - Who Is An Insured** is deleted and replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations, except to the extent that coverage is provided by the terms and conditions of this endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Blanket Notification to Others of Cancellation or Non-Renewal



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part by written notice to the first Named Insured, we will mail or deliver notification that such Coverage Part has been cancelled or non-renewed to each person or organization shown in a list provided to us by the first Named Insured if you are required by written contact or written agreement to provide such notification.  However, such notification will not be mailed or delivered if a conditional notice of renewal has been sent to the first Named Insured.  Such list:

    **1.** Must be provided to us prior to cancellation or non-renewal;

    **2.** Must contain the names and addresses of only the persons or organizations requiring notification that such Coverage Part has been cancelled or non-renewed; and

    **3.** Must be in an electronic format that is acceptable to us.

**B.** Our notification as described in Paragraph **A.** of this endorsement will be based on the most recent list in our records as of the date the notice of cancellation or non-renewal is mailed or delivered to the first Named Insured.  We will mail or deliver such notification to each person or organization shown in the list:

    **1.** Within seven days of the effective date of the notice of cancellation, if we cancel for non-payment of premium; or

    **2.** At least 30 days prior to the effective date of:

        **a.** Cancellation, if cancelled for any reason other than nonpayment of premium; or

        **b.** Non-renewal, but not including conditional notice of renewal.

**C.** Our mailing or delivery of notification described in Paragraphs **A.** and **B.** of this endorsement is intended as a courtesy only.  Our failure to provide such mailing or delivery will not:

    **1.** Extend the Coverage Part cancellation or non-renewal date;

    **2.** Negate the cancellation or non-renewal; or

    **3.** Provide any additional insurance that would not have been provided in the absence of this endorsement.

**D.** We are not responsible for the accuracy, integrity, timeliness and validity of information contained in the list provided to us as described in Paragraphs **A.** and **B.** of this endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0134

# Aircraft Products, Grounding, and Testing Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured:**

**Address (including Zip Code):**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products and Completed Operations Coverage Part**

This policy does not apply to any "bodily injury" or "property damage" arising out of "Aircraft Products," "Grounding" or "Testing."

"Aircraft Products" means:

1. aircraft, missiles or spacecraft; or

2. any other goods or products produced or furnished by the insured for the manufacture, repair, operation, maintenance, use or entrustment to others of aircraft, missiles or spacecraft, including but not limited to the following items:

   **(A)** goods or products installed in, used in connection with, or used as spare parts in aircraft, missiles or spacecraft; or

   **(B)** ground support and control equipment; or

   **(C)** ground handling tools and equipment;

3. any training aids, instructions, manuals blueprints, engineering data or engineering advice relating to the items described in 1 and 2 above; or

4. any services or labor provided by the insured or by others trading under the insured's name relating to **1.**, **2.**, or **3**. above.

"Grounding" means:

1. the withdrawal of any "aircraft products" from flight operations, or

2. the imposing of speed, passenger or load restrictions on such "aircraft products" due to the existence of, or the alleged or suspected existence of any defect, fault or condition in any "aircraft products"**;**

whether the "aircraft products" withdrawn are owned or operated by the same or different persons, firms or corporations.

A "grounding" begins:

   **(1)** on the date that any accident or occurrence results in disclosure of a known or suspected defect, fault or condition; or

   **(2)** on the date the "aircraft products" are first withdrawn from service due to a known or suspected defect, fault or condition,

whichever first occurs.

"Testing" means examination, observation, evaluation or measuring of the performance of "aircraft products," either while in the air or on the ground.

Countersigned: _____
                         **Authorized Representative**

Def Appendix 0135

# Claim Series Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1.  **Section I. Coverage A  Bodily Injury and Property Damage** is amended to include the following:

    All  "occurrences" which result in a series of  claims or "suits" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" due to a "common cause or condition" of "your products" or "your work" shall be deemed to be just one "occurrence", regardless of the total number of:

    a.  insureds;

    b.  claims made or "suits" brought;

    c.  persons or organizations making claims or bringing "suits"; or

    d.  potential  "occurrences" that might otherwise have applied in the absence of this endorsement.

2.  The following additional **Definition** is added:

    "Common Cause or Condition" means the same or similar design error, omission or defect, manufacturing defect, or failure by the insured to warn of a potential hazard in or of "your products" or "your work".

Def Appendix 0136

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1.  It is agreed that paragraph **2. a. (1)**  of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

    (1)  "Bodily injury" or "personal and advertising injury":

        (a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

        (b)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

        (c)  Arising out of his or her providing or failing to provide professional health care services.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0137

# Incidental Medical Malpractice
# Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.**   Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED**  are deleted and replaced by the following:

   **2.**   Each of the following is also an insured:

   **a.**   Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insured for:

   **(1)**   "Bodily injury" or "personal and advertising injury":

   **(d)**   Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

   **(1)**   medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

   **(2)**   emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.**   Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Silica or Silica Mixed Dust Exclusion

| Policy No. | Eff.  Date of  Pol. | Exp.  Date of  Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.   Exclusions**

This insurance does not apply to:

**Silica or Silica Mixed Dust**

A.   "Bodily injury", "property damage"  or  "personal and advertising injury" caused directly or indirectly, in whole or in part, by  the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of "silica"; or

B.   Loss, costs or expenses arising out of the  abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of "silica" by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definition applies:

"Silica" means:

(1)   Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

**(2)**   Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Def Appendix 0139

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

Def Appendix 0140

# DEFENSE WITHIN LIMITS NOTICE

**UNLIKE MOST LIABILITY INSURANCE POLICIES IN WHICH PAYMENT OF DEFENSE COSTS DOES NOT REDUCE THE POLICY LIMITS, THIS POLICY CONTAINS A 'DEFENSE WITHIN THE LIMITS' PROVISION. THE PROVISION INCLUDES THE INSURER'S COSTS FOR PROVIDING LEGAL DEFENSE AGAINST A CLAIM ALONG WITH ANY CLAIM SETTLEMENT AMOUNT WITHIN THE STATED POLICY LIMITS. WE HAVE THE RIGHT AND DUTY TO DEFEND THE INSURED AGAINST ANY SUIT SEEKING DAMAGES FOR BODILY INJURY OR PROPERTY DAMAGE TO WHICH THIS INSURANCE APPLIES. HOWEVER, ONCE THE POLICY LIMIT IS REACHED, THE INSURER'S RESPONSIBILITY TO PAY ANY FURTHER AMOUNTS FOR DEFENSE COSTS OR FOR ANY DAMAGES THAT MAY BE AWARDED ENDS, EXCEPT THAT THE INSURER WILL PAY DAMAGES FOR STATUTORILY REQUIRED LIABILITY INSURANCE TO THE LIMIT REQUIRED BY LAW.**

Def Appendix 0141

COMMERCIAL GENERAL LIABILITY
CG 01 23 03 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury And Property Damage Liability Coverage (Section I - Coverages)** and to Paragraph **2., Exclusions** of **Personal And Advertising Injury Liability Coverage (Section I - Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

Copyright, Insurance Services Office, Inc., 1996

Def Appendix 0142

COMMERCIAL GENERAL LIABILITY
CG 01 34 08 03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage** and to Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage B – Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

Def Appendix 0143

POLICY NUMBER: GLO 3793060−08

COMMERCIAL GENERAL LIABILITY
CG 01 54 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

**SCHEDULE**

| Pollution Liability Aggregate Limit: | $ 3,000,000 |
|---|---|

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following is added to **Section I – Coverages:**

**Coverage D Pollution Bodily Injury And Property Damage**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

     **(2)** Our right and duty to defend end when we have used up the Pollution Liability Aggregate Limit in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B** and **D.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

     **(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period.

   **c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

     **(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

     **(2)** When we make a settlement in accordance with Paragraph **1.a.** above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for injury or damage arising out of a discharge, release or escape of "pollutants", including all injury or damage arising out of all subsequent exposure of persons and property to such "pollutants", shall be deemed to have been made at the time the first of those claims is made against any insured.

© Insurance Services Office, Inc., 2012

Def Appendix 0144

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of the contract or agreement.

### c. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### e. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies to claims against any insured that allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which resulted in the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2012
Def Appendix 0145

**f. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**g. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you; or

**(4)** Personal property in the care, custody or control of the insured.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**i. Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard".

**j. Statutory Or Regulatory Clean-up Costs**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**k. Bodily Injury Or Property Damage**

"Bodily injury" or "property damage" which are covered under Coverage **A** – Bodily Injury And Property Damage Liability.

**B. Supplementary Payments — Coverages A And B** is replaced by the following:

**Supplementary Payments -- Coverages A, B And D**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

Def Appendix 0146

**5.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**C.** The following is added to **Section III — Limits Of Insurance:**

The Pollution Liability Aggregate Limit is the most we will pay under Coverage **D** for all damages because of injury and damage for which claim is first made during the policy period.

**D.** Paragraph **4. Other Insurance** of **Section IV — Conditions** is amended as follows:

All references to Coverage **A** or **B** are amended to read Coverage **A, B** or **D.**

**E.** The following additional definition applies:

"Pollution liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:

    **a.** Premises you own, rent or occupy; or

    **b.** Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

© Insurance Services Office, Inc., 2012

**CG 01 54 04 13**

Def Appendix 0147

COMMERCIAL GENERAL LIABILITY
CG 01 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties in the Event of Occurrence, Offense, Claim or Suit
Duties in the Event of Occurrence, Claim or Suit
Duties in the Event of Injury, Claim or Suit
Duties in the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties in the Event of a Loss
Duties in the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

**B.** The **Legal Action Against Us** Condition does not apply.

© ISO Properties, Inc., 2003
Def Appendix 0148

POLICY NUMBER: GLO 3793060-08                                  **COMMERCIAL GENERAL LIABILITY**
                                                                                    **CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>ALL PREMISES AS REQUIRED IN A WRITTEN LEASE OR CONTRACT. |
| **Name of Person(s) Or Organization(s) (Additional Insured):**<br>ANY PERSON OR ORGANIZATION AS REQUIRED IN A WRITTEN LEASE OR CONTRACT<br>SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. |
| **Additional Premium:**          **INCL.** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 11 04 13**                     © Insurance Services Office, Inc., 2012                     **Page 1 of 1**

Def Appendix 0149

POLICY NUMBER: GLO 3793060-08

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| ONLY THOSE STATE OR POLITICAL SUBDIVISIONS AS REQUIRED BY WRITTEN CONTRACT OR PERMIT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 12 04 13

© Insurance Services Office, Inc., 2012

**Page 1 of 1**

Def Appendix 0150

POLICY NUMBER: GLO 3793060-08

**COMMERCIAL GENERAL LIABILITY
CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| ALL VENDORS AS REQUIRED IN A WRITTEN CONTRACT OR AGREEMENT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. | ALL PRODUCTS COVERED UNDER THIS POLICY. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

© Insurance Services Office, Inc., 2012

Def Appendix 0151

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Def Appendix 0152

COMMERCIAL GENERAL LIABILITY
CG 20 34 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement you have entered into with the additional insured; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Def Appendix 0153

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

Def Appendix 0154

POLICY NUMBER: GLO 3793060-08

**COMMERCIAL GENERAL LIABILITY**
CG 21 16 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
|---|
| **1.** ALL PROFESSIONAL SERVICES |
| **2.** |
| **3.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

Def Appendix 0155

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006
Def Appendix 0156

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

**(1)**  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)**  Any loss, cost or expense arising out of any:

**(a)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Def Appendix 0157

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

(1)   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a)   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b)   At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2)   Any loss, cost or expense arising out of any:

(a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Def Appendix 0158

**COMMERCIAL GENERAL LIABILITY**
**CG 21 73 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Def Appendix 0159

POLICY NUMBER:  GLO 3793060-08                                  **COMMERCIAL GENERAL LIABILITY**
                                                                          CG 24 17 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY -  RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Scheduled Railroad:** | **Designated Job Site:** |
|---|---|
| ALL RAILROADS AS REQUIRED IN A WRITTEN CONTRACT SIGNED PRIOR TO LOSS AND NOT PROHIBITED BY LAW. | ALL RAILROAD JOBSITES |

 (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

CG 24 17 10 01                         © ISO Properties, Inc.,  2000                 <span style="color:red">Def Append</span>Page 1 of 1  ☐

**COMMERCIAL GENERAL LIABILITY**
**CG 26 88 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ALASKA EXCLUSION OF
# CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Def Appendix 0161

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL AUTOMOBILE COVERAGE PART
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

Def Appendix 0162

**IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98**              Copyright, Insurance Services Office, Inc., 1998              **Page 1 of 1**      □

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Def Appendix 0164

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Def Appendix 0165

IL 02 66 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation;

**c.** Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

**d.** Substantial breaches of contractual duties, conditions or warranties.

If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

**8.** With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph **7.** above:

We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

**9.** Notice of cancellation must be delivered or mailed by first-class mail.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

**2.** We need not mail this notice if:

**a.** You have accepted replacement coverage;

**b.** You have requested or agreed to nonrenewal; or

**c.** This policy is expressly designated as nonrenewable.

**3.** If notice is mailed, proof of mailing is sufficient proof of notice.

IL 02 66 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 1

Def Appendix 0166

**COMMERCIAL INSURANCE**

---

**CANCELLATION BY US**

---

**This endorsement changes the policy.  Please read it carefully.**

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

**SCHEDULE**

**Number of Days' Notice:**  90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**Insured Name:**
**Policy Number:**
**Effective Date:**



THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| General Liability                    Not Applicable – Terrorism Exclusion |

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-630-D CW (01/15)
Page 1 of 2

Def Appendix 0169

**E.   Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.**   To be an act of terrorism;

**2.**   To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.**   To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.**   To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Def Appendix 0170

# EXHIBIT B

Def Appendix 0171

 CT Corporation

**TO:**  Jeffrey Droubay
Dyno Nobel Inc.
2795 E Cottonwood Pkwy Ste 500
Salt Lake City, UT 84121-5695

**RE:**  **Process Served in Missouri**

**FOR:**  Dyno Nobel Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TEDDY SCOTT and MELANIE SCOTT, Pltfs. vs. DYNO NOBEL, INC., Dft.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | EASTERN DISTRICT OF MISSOURI – UNITED STATES DISTRICT COURT, MO<br>Case # 161440 |
| **NATURE OF ACTION:** | Product Liability Litigation – Personal Injury – Nitric acid |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/27/2016 at 08:39 |
| **JURISDICTION SERVED :** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this summons on you (not counting the day you received it) |
| **ATTORNEY(S) / SENDER(S):** | Robert W. Schmieder II<br>SL Chapman, LLC<br>330 North Fourth Street, Suite 330<br>St. Louis, MO 63102<br>314-588-9300 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1Z0399EX0119289450 |
| | Image SOP |
| | Email Notification,  Heidi Elder  HEIDI.ELDER@AM.DYNONOBEL.COM |
| | Email Notification,  Jeffrey Droubay  jeffrey.droubay@am.dynonobel.com |
| | CC Recipient(s)<br>Heidi Elder, via Regular Mail |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>120 South Central Avenue<br>Suite 400<br>Clayton, MO 63105 |
| **TELEPHONE:** | 314-863-5545 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Def Appendix 0172

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| TEDDY SCOTT AND MELANIE SCOTT | ) |
| _Plaintiff_ | ) |
| v. | ) |
| DYNO NOBEL, INC., | ) |
| _Defendant_ | ) |

Civil Action No.   16-1440

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Dyno Nobel, Inc.
CT Corporation System
120 South Central Avenue
Clayton, Missouri 63105

$30\ CTCOR$

St Louis Sheriff's Office
2016 SEP 22  PM 3: 28
Received

SEP 2 2 2016

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Robert W. Schmieder II
SL Chapman LLC
330 North 4th Street
Suite 330
St. Louis, MO 63102

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   09/15/2016

/s/ Genevieve Bales

_Signature of Clerk or Deputy Clerk_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TEDDY SCOTT AND MELANIE SCOTT          , | ) )  |
| **Plaintiffs,** | ) ) ) |
| **v.** | ) ) **Case No. 16-1440** |
| **DYNO NOBEL, INC.,** | ) ) ) |
| **Defendant.** | ) ) ) |
| *SERVE AT:* | ) |
| *CT Corporation System* | ) |
| *120 South Central Avenue* | ) |
| *Clayton, Missouri 63105* | ) |

### COMPLAINT

COME NOW Plaintiffs, Teddy Scott ("Scott") and Melanie Scott ("Melanie"), by and

through their attorneys, SL Chapman LLC, and for their Complaint against Defendant, Dyno

Nobel, Inc. ("Dyno"), state as follows:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1.     This Court has subject matter jurisdiction with regard to this lawsuit pursuant to

28 U.S.C. Section 1332(a) in that the parties are citizens of different states and the amount in

controversy exceeds $75,000.00, exclusive of interest and costs.

2.     At all times relevant to this lawsuit, Scott was a citizen and resident of the State of

Kentucky.

3.     At all times relevant to this lawsuit, Melanie was Scott's lawfully-wedded spouse

and was a citizen and resident of the State of Kentucky.

1

Def Appendix 0174

4.     At all times relevant to this lawsuit, Dyno was a Delaware corporation with the principal office for the transaction of its business in Salt Lake City, Utah.

5.     At all times relevant to this lawsuit, Dyno owned and operated an ammonia nitrate manufacturing facility located at 11025 Highway D in Louisiana, Pike County, Missouri.

6.     Ammonia is used at this Dyno facility as a raw material to make nitric acid, a material considered hazardous by the Environmental Protection Agency ("EPA"). Because of the toxic chemicals and substances used and made at its facility, Dyno is regulated by the EPA's Accidental Release Prevention Program and its Accidental Release Program, as part of The Clean Air Act Amendments of 1990; and by the United States Department of Labor, Occupational Health & Safety Administration's Process Safety of Highly Hazardous Chemicals standard, 29 CFR Section 1910.119.

7.     This Court has personal jurisdiction over Dyno by virtue of the fact that Dyno owned and operated the ammonia nitrate manufacturing facility in Louisiana, Missouri, and otherwise conducted business at this facility and at another Missouri facility located at or near Carthage, Missouri, at all times relevant to this lawsuit.

8.     At all times relevant to this lawsuit, Calumet Lubricants Co. ("Calumet") owned and operated a synthetic lubricants manufacturing facility located at 11089 Highway D in Louisiana, Pike County, Missouri.

9.     At all times relevant to this lawsuit, and upon information and belief, Calumet contracted with Bilfinger Westcon, Inc. ("Westcon"), as general contractor, for certain work to be performed on Calumet's synthetic lubricants facility in Louisiana, Missouri.

10.    At all times relevant to this lawsuit, and upon information and belief, Bilfinger Westcon subcontracted with Ardent Services LLC ("Ardent"), as subcontractor, for Ardent to

2

Def Appendix 0175

perform certain and various electrical contracting services at Calumet's synthetic lubricants facility in Louisiana, Missouri.

11.     At all times relevant to this lawsuit, Scott was an electrical foreman for and an employee of Ardent. The overwhelming percentage of Scott's work time on this Calumet project was spent outdoors exposed to the elements and ambient air.

12.     On Friday, March 20, 2015, Scott was working for Ardent outdoors on the property of Calumet, which was adjacent to the industrial plant owned and operated by Dyno. Specifically, Scott was working at or near the so-called "truck load-out" and/or "train load-out" area of the Calumet facility.

13.     On Friday, March 20, 2015, at about 8:15 a.m., there was a negligent sudden and unexpected discharge into the air of a reddish-looking cloud of a gaseous substance from one of the Dyno smokestacks on the Dyno industrial plant. This discharge of a reddish-looking gaseous substance, which turned out to be nitric acid, eventually filtered its way over to, above, and on the Calumet premises and into the working environment of the Westcon and Ardent workers. Scott was personally and substantially exposed to and confronted with the reddish-looking cloud of nitric acid and ingested and breathed in the same into his respiratory system and person.

14.     As a direct and proximate result of being exposed to toxic nitric acid from the Dyno discharge from its smokestack, Scott sustained serious and permanent personal injuries, all as is more specifically alleged below.

15.     As a direct and proximate result of her husband, Scott, experiencing serious and permanent personal injuries, Melanie has lost the consortium and services of her husband, Scott.

3

Def Appendix 0176

## COUNT I---SCOTT---NEGLIGENCE---DYNO NOBEL INC.

16.     Scott incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts.

17.     At all times relevant to this lawsuit, Dyno had the duty to manage and operate its ammonia nitrate manufacturing facility in a reasonable manner and in such a way and manner as to avoid the discharge of highly toxic substances, including nitric acid, into the air from its smokestacks, when it was foreseeable that such discharges of nitric acid might or could drift onto and into the working environment of workers working outdoors at the immediately-adjacent Calumet synthetic lubricants facility.

18.     Dyno breached and violated its duty to manage and operate its ammonia nitrate manufacturing facility in a reasonable manner, and was otherwise negligent in the discharge incident of March 15, 2015, in one or more of the following respects:

> a. It allowed nitric acid to escape from one of its smokestacks and into the air when it knew, or should have known, that by doing so it would cause workers, including Scott, working on the immediately-adjacent industrial facility, to become directly exposed to a very highly toxic substance;
>
> b. It failed to follow its own policies and procedures which were designed to prevent such discharges of toxic substances into the ambient air;
>
> c. It failed to warn workers, including Scott, that nitric acid might or could come spewing out of one of its smokestacks and into the working environment of workers working outdoors on the immediately-adjacent Calumet facility;

4

Def Appendix 0177

      d. It failed to follow its own policies and procedures which were designed to be put in play in the event of an unexpected discharge of nitric acid into the ambient air and which were intended to minimize the risks associated with such discharges.

    19. As a direct and proximate result of one or more of the foregoing acts and omissions of negligence on the part of Dyno, Plaintiff, Teddy Scott, sustained serious, permanent and debilitating personal injuries, including but not limited to severe migraine headaches, various severe respiratory, pulmonary, and neurological disorders, passing-out episodes, a low back injury due to one of his passing-out episodes, and others; has incurred and will incur into the indeterminable future medical expenses for necessary and appropriate medical treatment for his injuries; has experienced and will experience into the indeterminable future pain and suffering associated with his injuries; has lost income and will lose income into the indeterminable future as a result of the injuries to his person and psyche; has experienced and will experience into the indeterminable future situational depression, anxiety, mental anguish and frustration both with the nature, extent, and seriousness of his personal injuries and their effect on his ability to make a substantial living; has lost and will continue to lose into the indeterminable future what was for him was a normal life; and has sustained severe and permanent disability.

    WHEREFORE, Plaintiff, Teddy Scott, prays that Judgment be granted in his favor and against the Defendant, Dyno Nobel, Inc., on Count I of his Complaint in an amount greater than $75,000.00, exclusive of interest and costs; for his taxable Court costs herein; and for such other and further relief as this Court may deem to be equitable and just.

**PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS**

5

### COUNT II---MELANIE SCOTT---NEGLIGENCE---DYNO NOBEL INC.

20.     Plaintiff incorporates by reference the General Allegations section and Count I of the Complaint.

21.     As a direct and proximate result of the foregoing acts and omissions of negligence on the part of Dyno, Plaintiff, Melanie Scott, has lost the consortium and services of her husband, Scott, all to her severe and permanent detriment.

WHEREFORE, Plaintiff, Melanie Scott, prays that Judgment be granted in her favor and against the Defendant, Dyno Nobel, Inc., on Count II of her Complaint in an amount greater than $75,000.00, exclusive of interest and costs; for her taxable Court costs herein; and for such other and further relief as this Court may deem to be equitable and just.

### PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS

### COUNT III---TEDDY SCOTT---STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITIES---DYNO NOBEL INC.

22.     Plaintiff incorporates by reference as if fully set forth herein the General Allegations section and Count I of the Complaint.

23.     Due to the highly dangerous nature of the manufacturing processes involving the highly hazardous and toxic chemicals and substances at the Dyno manufacturing facility in Louisiana, Missouri, Dyno is to be held strictly liable for the personal and emotional injuries sustained by Scott herein.

24.     As a direct and proximate result of one or more of the foregoing acts and omissions of negligence on the part of Dyno, Plaintiff, Teddy Scott, sustained serious, permanent and debilitating personal   injuries, including but not limited to severe migraine headaches,

6

various severe respiratory, pulmonary and neurological disorders, passing-out episodes, a low back injury due to one of his passing-out episodes, and others; has incurred and will incur into the indeterminable future medical expenses for necessary and appropriate medical treatment for his injuries; has experienced and will experience into the indeterminable future pain and suffering associated with his injuries; has lost income and will lose income into the indeterminable future as a result of the injuries to his person and psyche; has experienced and will experience into the indeterminable future situational depression, anxiety, mental anguish and frustration both with the nature, extent, and seriousness of his personal injuries and their effect on his ability to make a substantial living; has lost and will continue to lose into the indeterminable future what was for him was a normal life; and has sustained severe and permanent disability.

WHEREFORE, Plaintiff, Teddy Scott, prays that Judgment be granted in his favor and against the Defendant, Dyno Nobel, Inc., on Count III of his Complaint in an amount greater than $75,000.00, exclusive of interest and costs; for his taxable Court costs herein; and for such other and further relief as this Court may deem to be equitable and just.

**PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS**

**COUNT IV---MELANIE SCOTT---STRICT LIABILITY--- DYNO NOBEL INC.**

25.     Plaintiff incorporates by reference the General Allegations section and Count I of the Complaint.

26.     Due to the highly dangerous nature of the manufacturing processes involving the highly hazardous and toxic chemicals and substances at the Dyno manufacturing facility in Louisiana, Missouri, Dyno is to be held strictly liable for the personal and emotional injuries

7

Def Appendix 0180

sustained by Teddy Scott herein, and therefore is to be held strictly liable for the loss of consortium damages sustained and experienced by Melanie Scott herein.

27.     As a direct and proximate result of the foregoing acts and omissions of negligence on the part of Dyno, Plaintiff, Melanie Scott, has lost the consortium and services of her husband, Scott, all to her severe and permanent detriment.

WHEREFORE, Plaintiff, Melanie Scott, prays that Judgment be granted in her favor and against the Defendant, Dyno Nobel, Inc., on Count IV of her Complaint in an amount greater than $75,000.00, exclusive of interest and costs; for her taxable Court costs herein; and for such other and further relief as this Court may deem to be equitable and just.

### PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS

DATED this 9th day of September, 2016.

RESPECTFULLY SUBMITTED,

BY:     /s/ Robert W. Schmieder II
        Robert W. Schmieder II
        robs@slchapman.com
        SL Chapman, LLC
        330 North Fourth Street, Suite 330
        St. Louis, Missouri 63102
        Telephone: (314) 588-9300
        Fax: (314) 588-9302

8

Def Appendix 0181

# EXHIBIT C

Def Appendix 0182

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

TEDDY SCOTT AND MELANIE )
SCOTT, )
                                                            )
             Plaintiffs, )
                                                            )
v.                                                          )          Case No. 16-1440
                                                            )
DYNO NOBEL, INC., )
                                                            )
             Defendant. )
                                                            )

## FIRST AMENDED COMPLAINT

For their First Amended Complaint against Defendant Dyno Nobel, Inc. ("Dyno"),

Plaintiffs Teddy Scott ("Teddy") and Melanie Scott ("Melanie"), by and through their attorneys,

allege as follows:

### General Allegations

1.     This Court has subject matter jurisdiction with regard to this lawsuit pursuant to

28 U.S.C. Section 1332(a) in that the parties are citizens of different states and the amount in

controversy exceeds $75,000, exclusive of interest and costs.

2.     Teddy is a citizen and resident of the Commonwealth of Kentucky.

3.     Melanie is Teddy's spouse and a citizen and resident of the Commonwealth of

Kentucky.

4.     At all relevant times, Dyno has been a Delaware corporation with the principal

office for the transaction of its business in Salt Lake City, Utah.

5.     At all relevant times, Dyno has owned and operated a nitric acid manufacturing

facility located at 11025 Highway D in Louisiana, Pike County, Missouri (the "Plant").

6.     At its Plant, Dyno uses ammonia as a raw material to make nitric acid.

1

7.    Nitric acid is a hazardous material according to the Environmental Protection Agency ("EPA").

8.    Because of the toxic chemicals and substances Dyno uses and makes at its Plant, Dyno is regulated by the EPA's Accidental Release Prevention Program and its Accidental Release Program, as part of The Clean Air Act Amendments of 1990, and by the United States Department of Labor, Occupational Health & Safety Administration's Process Safety of Highly Hazardous Chemicals standard, 29 CFR Section 1910.119.

9.    This Court has personal jurisdiction over Dyno by virtue of the fact that Dyno has owned and operated its Plant in Louisiana, Missouri, and otherwise conducted business at the Plant and at another Missouri facility located at or near Carthage, Missouri.

10.   At all relevant times, Calumet Lubricants Co. ("Calumet") owned and operated a synthetic lubricants manufacturing facility located at 11089 Highway D in Louisiana, Pike County, Missouri (the "Calumet Facility").

11.   The Dyno Plant is adjacent to the Calumet Facility, located on the southern border of the Dyno Plant.



Def Appendix 0184

12. The Calumet Facility, those working at the Calumet Facility, and Teddy Scott specifically are potentially affected neighbors of Dyno in the event that harmful chemicals are released from Dyno.

13. Upon information and belief, Calumet contracted with Bilfinger Westcon, Inc. ("Westcon"), as general contractor, for certain work to be performed on Calumet's synthetic lubricants facility in Louisiana, Missouri.

14. Upon information and belief, Westcon contracted with electrical subcontractor Ardent Services LLC ("Ardent") to perform certain and various electrical contracting services at Calumet's synthetic lubricants facility in Louisiana, Missouri.

15. At all relevant times, Teddy was an electrical foreman for and an employee of Ardent.

16. While working at the Calumet Facility, Teddy worked outdoors exposed to the elements and ambient air.

17. Dyno knew, or should have known, that there were people who worked outdoors at the adjacent Calumet Facility.

18. During normal operating conditions, Dyno's Plant releases varying levels of compounds that Dyno describes as "NOx" or oxides of nitrogen into the atmosphere through its exhaust stack.

19. The Plant's NOx emissions may include nitric acid, compounds that may become nitric acid when they reach the atmosphere, or other chemical compounds for which exposure to humans is harmful and unsafe.

20. According to the Material Safety Data Sheet for Dyno's nitric acid, health hazards from overexposure to nitric acid include:

3

Def Appendix 0185

Eyes:  Will produce severe, immediate damage and may result in permanent damage or loss.

Skin:  Will produce immediate, penetrating chemical burns, with a characteristic yellow coloration.  Severe and fatal skin burns can occur with necrosis and scarring.

Ingestion:  Will cause immediate irritation, chemical burns to mouth and throat and may cause hemorrhaging, necrosis and perforation of the gastrointestinal tract.  Based on toxicity data for other acids, not expected to be toxic by oral exposure as defined by OSHA.

Inhalation: Highly toxic by inhalation as defined by OSHA.  Mild exposure may cause irritation and burning of the nose and throat.  Extreme inhalation may cause difficult breathing, loss of consciousness, pulmonary edema or death.  Lung damage may appear after a delay of up to 48 hours after exposure.

21.    During operation, process gas rich in NO and $NO_2$ is introduced into the bottom of the absorber and steam condensate is injected into the top.  As the water flows down the absorber it reacts with the counter current flow of $NO_2$ to form nitric acid.  Un-reacted gas exits the top of the absorber.  The gas is saturated with weak acid droplets that are removed in an acid mist separator.  The gas then flows through heat recovery equipment and is eventually discharged out the exhaust stack.

22.    Operating the absorber at optimal conditions reduces the NOx emissions.  The most critical efficiency-determining factor is operating pressure.  The absorber was designed to operate at pressures between 9 and 10 bars; at this condition, the absorption efficiency is optimal.

23.    From time to time, Dyno shuts down nitric acid operations at its Plant in order to perform maintenance.

24.    After Dyno completes the maintenance during a shutdown, Dyno then goes through a start-up process of its nitric acid operations.

25.    During the start-up process, more harmful gasses than normal are emitted from the Plant due to the varying efficiency of the nitric acid absorption column during start-up.

4

Def Appendix 0186

26.     Due to the design capabilities of the process equipment and in order to prevent damage to the equipment, the pressure is slowly increased to normal operational level during a start-up.

27.     During the time it takes to ramp-up the pressure to optimum levels, the NOx emissions from the absorber are higher than what is experienced during normal operation, usually resulting in opacity of greater than 40%.

28.     During start-up, it takes approximately two hours to reach the ideal conditions.

29.     Higher than normal levels of NOx emissions occur for at least 50% of the duration of the time required for the start-up process.

30.     Dyno knew, or should have known, that NOx emissions from its Plant during a start-up were higher than normal and would be harmful to any person who was exposed to them.

31.     In March of 2015, Dyno shut down nitric acid operations at its Plant in order to perform maintenance reported as a catalyst gauze change.

32.     After Dyno completed the catalyst gauze change maintenance in March of 2015, Dyno prepared for a start-up of its Plant.

33.     Dyno first began the start-up on March 19, 2015.

34.     After experiencing a mechanical failure, Dyno's Plant was shut down at approximately 5:00 a.m. on March 20, 2015.

35.     After repairs, Dyno then began another start-up on March 20, 2015 at approximately 8:30 a.m.

36.     On March 20, 2015, atmospheric conditions near Dyno's Plant were such that clouds were forced low to the ground. Clouds were so low that day that a 200 foot smoke stack at Dyno's Plant was partially obscured by cloud cover.

5

Def Appendix 0187

37.     According to the Material Safety Data Sheet for Dyno's nitric acid, nitric acid vapor is denser than air so that it will concentrate in low spots.

38.     On March 20, 2015, the wind conditions near Dyno's Plant were unknown, unpredictable, and/or changeable.

39.     According to the Material Safety Data Sheet for Dyno's nitric acid, in case nitric acid is released or spilled, personnel must be evacuated to a safe area upwind of the spill.

40.     During the March 20, 2015 start-up, the Dyno Plant released higher than normal levels of NOx emissions and other harmful emissions, which were visible as a red-orange plume, through its exhaust stack.

41.     The start-up emissions, which remained low to the ground and changed directions due to the wind, eventually passed over to, above, and onto the Calumet Facility.

42.     During Dyno's start-up on March 20, 2015, Teddy was working for Ardent outdoors at the adjacent Calumet Facility near the "truck load-out" and/or "train load-out" area.

43.     As the start-up emissions came onto the Calumet Facility where Teddy was working, Teddy was exposed to, ingested, and/or inhaled the start-up NOx emissions from Dyno's Plant.

44.     Dyno has reported that it released 1500 pounds of NOx through its Plant's stack for a period of approximately three hours during the March 20, 2015 start-up.

45.     Under normal operating circumstances, Dyno must report any discharge of more than 1000 pounds of NOx in a 24 hour period to appropriate regulatory agencies.

46.     Dyno's Plant has, or should have had, various detection systems such as process monitoring and control instrumentation with alarms to alert Dyno should a release of hazardous material occur.

6

Def Appendix 0188

47.     At all relevant time hereto, Dyno has had an Emergency Control and Crisis Communications Plan to notify the Calumet Facility, any potentially affected neighbors, and the local fire authority in the event that emissions from an accidental release at its Plant posed a danger.

48.     The Emergency Control and Crisis Communications Plan is undertaken voluntarily, or alternatively, by requirement of law in order to protect the workers of Calumet and any potentially affected neighbors.

49.     On information and belief, Dyno's Emergency Control and Crisis Communications Plan did not provide for notification of Calumet, other potentially affected neighbors, or the local fire authority during the March 20, 2015 event despite high levels of hazardous materials, including NOx, being emitted from the plant during the start-up because the emissions did not qualify as an accidental release that would require reporting to a regulatory agency.

50.     Dyno failed to notify the Calumet Facility nor any potentially affected neighbors of any dangers associated with its Plant's start-up emissions.

51.     Dyno failed to notify Teddy or any other workers at the Calumet Facility of any dangers associated with its Plant's start-up emissions.

52.     At all relevant times, federal regulations required Dyno to conduct Process Hazard Analysis ("PHA") for its Plant, which plans are to be updated and revalidated at least every five years. 29 CFR 1910.119.

53.     The PHA is expressly required to address "facility siting" which is a study of the spatial relationships within a plant and between a plant and surrounding area evaluating the hazards a plant may pose to its neighbors. 29 CFR 1910.119(e).

7

Def Appendix 0189

54.     The PHA is required to address a qualitative evaluation of a range of the possible safety and health effects of failure of controls on employees in the workplace. 29 CFR 1910.119(e).

55.     During the Process Safety Management inspection conducted by OSHA following the March 20, 2015 event, OSHA found what it termed a "serious" violation in that the PHA did not address a qualitative evaluation of a range of the possible safety and health effects of failure of controls on employees in the workplace. Further, Dyno had not completed a qualitative evaluation of hazards covered in facility siting. The last PHA for Ammonia Storage and Acid Plant processes had not included any risk assessment for nodes related to facility siting.

56.     During the Process Safety Management inspection conducted by OSHA following the March 20, 2015 event, OSHA found additional instances of "serious" violations where many action items for past PHAs and annual audits were closed before the assigned tasks were completed. Items were closed with statements that corrective action would take place on a future date.

57.     As a direct and proximate result of being exposed to NOx emissions and other harmful emissions from the Dyno start-up emissions, Teddy sustained serious and permanent personal injuries, including (but not limited to) irritable larynx syndrome, laryngospasms, chronic bronchitis, post-tussive syncope, migraine headaches, and other respiratory, pulmonary, and neurological issues.

58.     As a direct and proximate result of being exposed to NOx emissions and other harmful emissions from the Dyno start-up emissions, Teddy's medical conditions from the March 20, 2015 event have caused him to pass out, fall to the ground, and injure his low back.

Def Appendix 0190

59.     As a direct and proximate result of her husband's serious and permanent personal injuries, Melanie has lost the consortium and services of Teddy.

## COUNT 1
### (Negligence)

60.     Teddy hereby incorporates the general allegations as if set forth herein.

61.     At all times relevant hereto, Dyno had the duty to use that degree of care that an ordinarily careful person would use under the same or similar circumstances when managing and operating the Plant.

62.     Specifically, Dyno had a duty to avoid exposing potentially affected neighbors to start-up emissions, to provide a timely warning that such a danger was present, or to otherwise safeguard potentially affected neighbors when it was foreseeable that such emissions might or could drift into the presence of potentially affected neighbors in sufficient quantity or concentration to cause injury.

63.     On or about March 20, 2015, it was foreseeable that start-up emissions might or could drift into the presence of potentially affected neighbors in sufficient quantity or concentration to cause injury.

64.     Dyno breached and violated its duty, and was otherwise negligent, in one or more of the following respects, by:

    a. Failing to warn potentially affected neighbors of the start-up;

    b. Failing to warn potentially affected neighbors of the dangers of exposure to, ingestion of, and/or inhalation of the start-up emissions;

    c. Failing to monitor emissions from the start-up to confirm that they dispersed into the atmosphere away from potentially affected neighbors;

9

d. Failing to have or heed adequate detection systems, such as process monitoring and control instrumentation with alarms, in place to alert Dyno of a release of hazardous material during the start-up;

e. Failing to properly monitor atmospheric and wind conditions during the start-up to determine whether the start-up emissions posed a danger to potentially affected neighbors;

f. Failing to have or follow a proper Emergency Control and Crisis Communications Plan with procedures to notify potentially affected neighbors of the danger of start-up emissions;

g. Failing to have or deploy an emergency response team with equipment and training necessary to protect potentially affected neighbors from start-up emissions;

h. Failing to properly complete and maintain a current Process Hazard Analysis for its Plant as in violation of federal regulations designed to prevent or mitigate exposure and injuries; and

i. Starting-up its nitric acid operations at the Plant under the atmospheric and wind conditions near its Plant on or about March 20, 2015.

65.     The foregoing conduct showed complete indifference to or conscious disregard for the safety of others.

66.     As a direct and proximate result of one or more of the foregoing acts and omissions of negligence on the part of Dyno, Teddy sustained serious, permanent and debilitating personal  injuries, including but not limited to severe migraine headaches, various severe respiratory, pulmonary, and neurological disorders, passing-out episodes, a low back

10

Def Appendix 0192

injury due to one of his passing-out episodes, and others; has incurred and will incur into the indeterminable future medical expenses for necessary and appropriate medical treatment for his injuries; has experienced and will experience into the indeterminable future pain and suffering associated with his injuries; has lost income and will lose income into the indeterminable future as a result of the injuries to his person and psyche; has experienced and will experience into the indeterminable future situational depression, anxiety, mental anguish and frustration both with the nature, extent, and seriousness of his personal injuries and their effect on his ability to make a substantial living; has lost and will continue to lose into the indeterminable future what was for him was a normal life; and has sustained severe and permanent disability.

WHEREFORE, Plaintiff Teddy Scott prays that Judgment be granted in his favor and against the Defendant, Dyno Nobel, Inc., on Count I of his Complaint for compensatory damages in an amount greater than $75,000, exclusive of interest and costs; for exemplary damages; for his taxable Court costs herein; and for such other and further relief as this Court may deem to be equitable and just.

## PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS

## COUNT II
### (Loss of Consortium)

67.     Melanie hereby incorporates all of the allegations as if set forth herein.

68.     As a direct and proximate result of the foregoing acts and omissions of negligence on the part of Dyno, Melanie has lost the consortium and services of her husband, Teddy, all to her severe and permanent detriment.

WHEREFORE, Plaintiff Melanie Scott prays that Judgment be granted in her favor and against the Defendant, Dyno Nobel, Inc., on Count II of her Complaint for compensatory

11

Def Appendix 0193

damages in an amount greater than $75,000, exclusive of interest and costs; for exemplary

damages; for her taxable Court costs herein; and for such other and further relief as this Court

may deem to be equitable and just.

**PLAINTIFF DEMANDS OF JURY TRIAL OF SIX ON ALL COUNTS**

DATED this 3rd day of March, 2017.

RESPECTFULLY SUBMITTED,

BY:    /s/ Robert W. Schmieder II
       Robert W. Schmieder II
       robs@slchapman.com
       SL Chapman LLC
       330 North Fourth Street, Suite 330
       St. Louis, Missouri 63102
       Telephone: (314) 588-9300
       Fax: (314) 588-9302

Def Appendix 0194

**Certificate of Service**

The undersigned hereby certifies that the foregoing was filed electronically through the

Court's electronic filing System on March 3, 2017, which served a copy of the foregoing upon

counsel of record.


William S. Thomas
Nicholas P. Meriage
PITZER SNODGRASS, P.C.
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)


Robert W. Schmieder II

Def Appendix 0195

# Return of Electronic Notification

| Recipients |
|---|
| **ASHLEY WALKER**  - Notification received on 2021-11-08 13:41:56.93. |

Def Appendix 0196

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

| | |
|---|---|
| **A filing has been submitted to the court RE:** | 210906012 |
| **Case Title:** | DYNO NOBEL INC vs. STEADFAST INSURANCE COMPANY |
| **Judge:** | ROBERT FAUST |
| **Commissioner:** | |
| **Official File Stamp:** | 11-08-2021 13:41:24 |
| **Court:** | 3RD DISTRICT COURT - SALT LAKE |
| | District |
| | Salt Lake |
| **Document(s) Submitted:** | Complaint |
| | Other Exhibit A |
| | Other Exhibit B |
| | Other Exhibit C |
| **Filed by or in behalf of:** | ASHLEY WALKER |

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

ASHLEY WALKER for DYNO NOBEL INC

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

STEADFAST INSURANCE COMPANY

Def Appendix 0197

## CERTIFICATE OF SERVICE

| | |
|---|---|
| THIRD JUDICIAL DISTRICT COURT, IN AND FOR SALT LAKE COUNTY, STATE OF UTAH | Case #: 210906012 |

---

| | |
|---|---|
| **Dyno Nobel, Inc.** | Plaintiff |
| **vs.** | |
| **Steadfast Insurance Company** | Defendant |

---

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all the times herein mentioned was a citizen of the United States, over the age of 18, not a party to nor interested in the above entitled action, is competent to be witness therein, and that I served copies of the:

**Summons & Complaint; Exhibit(s)**

| | |
|---|---|
| PARTY SERVED: | **STEADFAST INSURANCE COMPANY** |
| PERSON SERVED: | **MATT KINKER, CLAIMS ASSOCIATE** |
| METHOD OF SERVICE: | **Corporate** - By leaving copies with the person identified above, apparently in charge at the office or usual place of business. I informed him/her of the general nature of the papers. |
| DATE & TIME OF DELIVERY: | **12/07/2021 at 9:40 AM** |
| ADDRESS, CITY AND STATE: | **1299 ZURICH WAY, SCHAUMBURG, IL 60196** |
| DESCRIPTION: | Race: **White**   Sex: **Male**   Age: **28** |
| | Height: **5'9"**   Weight: **170**   Hair: **Brown**   Glasses: **No** |

Judicial Attorney Services, Inc.
2100 Manchester Rd., Ste 503-2
Wheaton, IL 60187
(630) 221-9007

I declare under penalties of perjury that the information contained herein is true and correct. Executed on 12/8/2021.

Signature: _____
Craig Palmer
Registration No: 117-001119

Def Appendix 0198

# Return of Electronic Notification

| Recipients |
|---|
| **ASHLEY WALKER**  - Notification received on 2021-12-08 09:38:06.963. |

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:**    210906012

**Case Title:**    DYNO NOBEL INC vs. STEADFAST INSURANCE COMPANY

**Judge:**    ROBERT FAUST

**Commissioner:**

**Official File Stamp:**    12-08-2021 09:37:46

**Court:**    3RD DISTRICT COURT - SALT LAKE

District

Salt Lake

**Document(s) Submitted:**    Return of Service

**Filed by or in behalf of:**    ASHLEY WALKER

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

ASHLEY WALKER for DYNO NOBEL INC

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

STEADFAST INSURANCE COMPANY